**JUDICIAL WATCH, INC.,
et al., Plaintiffs,**

v.

**Hillary Rodham CLINTON,
et al., Defendants.**

**Civ. A. No. 94–1688 (RCL).**

United States District Court,
District of Columbia.

Feb. 21, 1995.

Larry Klayman, Kenneth F. Boehm, Judicial Watch, Inc., Washington, DC, and Nat. Legal & Policy Center, Vienna, VA, for plaintiffs.

David E. Kendall, Williams & Connolly, Washington, DC, for Hillary Clinton.

Daryl A. Libow, Sullivan & Cromwell, Washington, DC, for Presidential Legal Expense Trust and Trustees.

Robert A. Van Kirk, Dept. of Justice, Washington, DC, for Steven D. Potts, Office of Government Ethics & Lloyd Cutler and Abner Mikva.

Ky E. Kirby, Swidler & Berlin, Washington, DC, for Michael Berman.

4

## MEMORANDUM OPINION

LAMBERTH, District Judge.

President and Mrs. Clinton established the Presidential Legal Expense Trust to help defray their personal legal expenses. Plaintiffs allege in Count 1 that the Trust is subject to, and has violated, the Federal Advisory Committee Act. Plaintiffs allege in Count 2 that the Office of Government Ethics improperly responded to their request under the Freedom of Information Act for documents pertaining to the Trust.

Each of the defendants has moved for dismissal or for summary judgment.[1] Upon consideration of the filings and oral arguments of counsel, the relevant law, and for the reasons more fully set forth below: Motions to dismiss by defendants Clinton, Mikva, Berman, the Trust and its trustees are hereby GRANTED. The motion for summary judgment by defendant Potts is hereby GRANTED.

### I. PARTIES

Plaintiffs Judicial Watch, Inc. and National Legal & Policy Center are non-profit corporations under the laws of the District of Columbia. Their mission includes, among other things, preventing and correcting abuses of public trust by government officials.

Defendant Hillary Rodham Clinton ("Mrs. Clinton") is the wife of the President of the United States, William Jefferson Clinton ("the President"). Mrs. Clinton advises the President on official and other matters.

Defendants the Presidential Legal Expense Trust ("the Trust") was established for the purpose of accepting contributions from the general public to pay legal expenses incurred by President and Mrs. Clinton. These expenses arise out of various lawsuits and legal proceedings commenced after the President assumed office but not directly related to his official duties. The Trust accepts contributions up to $1,000 from U.S. citizens other than Federal employees; corporations and unions may not contribute, although lobbyists may.[2] Donations are not tax-deductible. Anonymous contributions are not accepted; names of contributors must be disclosed at least semi-annually. The President and Mrs. Clinton are the sole beneficiaries of Trust funds.

Trustees of the Trust are also defendants. They include Rev. Theodore M. Hesburgh, Nicholas de B. Katzenbach, John Brademas, Barbara Jordan, Ronald Olson, Elliot Richardson, Michael Sovern, John Whitehead and Michael Cardozo. Defendant Cardozo serves as Executive Director of the Trust.

Defendant Lloyd N. Cutler was Special White House Counsel to the President. On October 1, 1994, Judge Abner J. Mikva assumed the duties of White House Counsel and was properly substituted as defendant for Mr. Cutler pursuant to Fed.R.Civ.P. 25(d). Plaintiffs, however, contend that Mr. Cutler was sued in both his individual and official capacities, and should therefore remain as an individual defendant.

Defendant Michael Berman is an associate at Duberstein Group in Washington, D.C. He is active in Democratic party politics and, according to plaintiffs, advises the President and Mrs. Clinton and others in the executive branch.

Defendant Stephen D. Potts is Director of the U.S. Office of Government Ethics ("OGE"). OGE is the governmental entity charged in part with enforcing the restrictions imposed by 5 U.S.C. § 7353 which governs gifts to federal employees. OGE has both investigatory and remedial powers when

---

1. Defendant Hillary Rodham Clinton has moved for dismissal of Count 1 of the Amended Complaint for want of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief can be granted, Fed. R.Civ.P. 12(b)(6). Defendant Abner J. Mikva (substituted for Defendant Lloyd N. Cutler) has moved for dismissal of Count 1 under Rules 12(b)(1) and (6). Defendants Michael Berman, Presidential Legal Expense Trust and its trustees have moved for dismissal of the complaint under Rules 12(b)(1) and (6). Defendant Stephen D. Potts has moved for dismissal of Count 2 pursuant to Rule 12(b)(1). Alternatively, Potts has moved for summary judgment as to Count 2 pursuant to Fed.R.Civ.P. 56(c).

2. The court is advised that contributions from lobbyists are no longer accepted; but this change is not part of the record in this case.

it appears that Section 7353 has been violated.

## II. BACKGROUND

On or about June 28, 1994, the President and Mrs. Clinton established the Trust to help defray their legal expenses. Plaintiffs claim that the Trust, its trustees, and those acting in concert with the trustees, including defendants Mikva and Berman who are allegedly *de facto* trustees, advise the President and Mrs. Clinton and others in the executive branch on matters involving their official duties. Thus, say the plaintiffs in Count 1, the Trust is an advisory committee as defined in the Federal Advisory Committee Act, 5 U.S.C.App. 2 ("FACA"). Specifically, the trustees and other defendants advise the President on: (a) the legality of soliciting and accepting funds; (b) methods and procedures for soliciting and accepting funds; (c) methods and procedures of distributing and applying funds; and (d) winding up of the Trust and distribution of remaining funds.[3]

Plaintiffs contend that the Trust has not satisfied the requirements for advisory committees under FACA. In particular, the Trust has not filed a charter setting forth its official designation, objectives, scope, time frame, authority, lines of responsibility, reporting structure, support, operating costs, and estimated manhours. Nor has the Trust allowed for input from interested persons, complied with the Freedom of Information Act (5 U.S.C. § 552 *et seq.*) ("FOIA"), nor published notice of trustees' meetings in the Federal Register. 5 U.S.C.App. 2 §§ 9–10.

Notwithstanding repeated efforts to secure defendants' compliance with FACA, FOIA and other laws and regulations, plaintiffs contend they have been frustrated and unable to carry out their objective to prevent abuse of public trust by government officials.

The court's analysis of whether public trust has been abused will necessarily be constricted. Count 1 of this case is a matter of first impression. To the court's knowledge, there have been no other funds established by a sitting president to offset his personal legal fees and costs. Clearly, there are major public policy, legal and ethical questions presented here; see, e.g., note 3, *supra.* However, only a narrow subset of these questions will be resolved in this lawsuit. Specifically, the court in this case will address whether the Trust is subject to FACA; the court does not address the wisdom, ethical implications, or other legal issues attendant to creation and operation of the trust.

Count 2 of the complaint concerns FOIA and OGE. Larry Klayman, officer and gen-

---

3. Plaintiffs also contend in their Amended Complaint that persons donating money to the trust do so with the expectation that they will receive influence, political favors or something else of value from the executive branch, the President and/or Mrs. Clinton. Thus, the Trust, its trustees, the other defendants and the President are alleged to be in violation of various laws and regulations governing such influence peddling. *See, e.g.,* 5 U.S.C. § 7353 (gifts to federal employees), 18 U.S.C. § 201(c) (illegal gratuities); 18 U.S.C. § 208 (acts affecting a personal financial interest); 18 U.S.C. § 209 (payment of Government salaries); 3 C.F.R. 100.735 *et seq.* (White House standards of conduct); and 5 C.F.R. 2635.101 *et seq.* (executive branch standards of conduct).

None of these statutes and regulations provides for a private right of action. Accordingly, this component of plaintiffs' claims must be dismissed under Fed.R.Civ.P. 12(b)(6). *See, e.g., Ray v. Proxmire,* 581 F.2d 998, 1001 (D.C.Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 326, 58 L.Ed.2d 329 (1978) (upholding 12(b)(6) dismissal of claim brought under 18 U.S.C. § 201 because "bare criminal statute" provides no private cause of action). Lacking a private cause of action, plaintiffs have no standing to assert these claims; thus the claims may be dismissed on this basis as well. *See, e.g., National Treasury Employees' Union v. Campbell,* 654 F.2d 784 (D.C.Cir.1981) (given no private cause of action, claim dismissed for lack of standing).

In their opposition to defendants' motions to dismiss, plaintiffs deny that they are seeking relief under the various anti-gratuity and conflict of interest laws and regulations. Rather, relief as to Count 1 is sought only under FACA (and derivatively under FOIA). Still, plaintiffs consider it necessary to enumerate the alleged non-FACA violations since they bear on the illegality of the Trust and the nature of the advice being provided by the advisory committee to President and Mrs. Clinton.

Because plaintiffs are not separately claiming under the non-FACA statutes, and because the court concludes that the Trust is exempt from FACA, the court does not address the merits of the alleged anti-gratuity and conflict of interest infractions.

eral counsel of plaintiff Judicial Watch, filed FOIA requests in July 1994 seeking from OGE, *inter alia,* all documents or tangible items concerning the Trust. He also sought a Vaughn Index or other required means of identifying any withheld documents or redacted portions. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Klayman asserts that he has assigned all rights in these requests to Judicial Watch. OGE granted the requests in part and denied them in part. However, no Vaughn Index was provided. With respect to material not provided, OGE invoked an exemption from disclosure pursuant to 5 U.S.C. § 552(b)(5). OGE also declined to disclose documents that it did not consider to be "agency records."

OGE responded to Klayman's FOIA requests on July 21, 1994, several days before the end of the statutory period in which the agency had to respond. The next day, on July 22, OGE issued a written opinion on the legality of the Trust; the opinion was not included among the materials provided to Klayman on July 21. Judicial Watch has since obtained a copy of the opinion (which indicated that the Trust would not be inconsistent with applicable ethical principles governing executive branch employees). Nonetheless, in light of what it perceives as gamesmanship by OGE, plaintiffs infer that other documents were improperly withheld. Plaintiffs maintain that OGE and its director, Stephen Potts, are acting in concert with the other defendants in violation of FACA and other enumerated laws and regulations. Judicial Watch filed an administrative appeal of the partial response to Klayman's FOIA requests, but the appeal was denied on August 5, 1994.

In Count 1 of the Amended Complaint, for violations of FACA and FOIA by the Trust, plaintiffs seek to enjoin defendants from fur-

ther solicitation or acceptance of funds, and from advising the President and Mrs. Clinton while the Trust continues to violate FACA. Plaintiffs seek, in addition, a writ of mandamus compelling defendants to comply with FACA, an order directing the Trust to return those funds already received, an order requiring the Trust to comply with all of plaintiffs' FOIA requests, and an award of attorneys' fees and costs. In Count 2 of the Amended Complaint, for violation of FOIA by both OGE and the Trust, plaintiffs seek an order requiring OGE and the Trust to comply with all of plaintiffs' FOIA requests, and an award of attorneys' fees and costs.

Defendants advance the following arguments: First, the Amended Complaint does not state a claim under FACA because the Trust, an operational body which does not render governmental policy advice to the President, is not an "advisory committee" within the contemplation of FACA, nor therefore is it subject to FOIA. To the contrary, the Trust is a private entity established by the President and Mrs. Clinton for personal reasons unconnected to their official duties. Second, the proper defendant in a FACA suit is the government entity that established or utilized the alleged advisory committee. Neither the Trust, the trustees, Mrs. Clinton, nor defendants Cutler, Mikva, Berman and Potts qualify as proper defendants. Third, OGE responded in a timely and appropriate manner to plaintiffs' FOIA requests. Any documents not provided to the plaintiffs were either not "agency records," or the documents were exempt under FOIA's deliberative process privilege (5 U.S.C. § 552(b)(5)).[4]

The court agrees with defendants that the Trust is not an advisory committee, and is thus not subject to FACA or FOIA. Because this finding is dispositive with respect to Count 1, the court need not reach whether

---

4. Defendant Potts, on behalf of OGE, contends that the agency and not an individual federal official should have been the defendant in this matter; and Mr. Klayman, who actually filed the FOIA request, should have been the plaintiff. Potts also argues that the complaint was subject to dismissal for failure to exhaust administrative remedies.

The court has not addressed these issues because it finds that OGE has either furnished the requested documents or established that withheld documents need not have been furnished. Judicial and other resources are better conserved by reaching substantive rather than procedural questions, especially as here where the substantive issues are straightforward and narrowly delineated.

plaintiffs sued the proper defendants under FACA. Further, the court holds that defendant Potts is entitled to summary judgment as a matter of law on Count 2. There is no basis upon which to conclude that OGE responded improperly to plaintiffs' FOIA requests.

## III. LEGAL STANDARDS

■ In evaluating Potts' motion (Count 2), the court has considered evidence outside of the complaint; accordingly, his motion will be treated as one for summary judgment rather than a motion to dismiss. *See* Fed. R.Civ.P. 12(b). Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *E.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *E.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If summary judgment is to be denied, there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). But if the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," summary judgment may be granted. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ Motions by the remaining defendants are for dismissal under Rules 12(b)(1) and (6). Plaintiffs' factual allegations must be presumed true and liberally construed in favor of the plaintiffs when reviewing the adequacy of a complaint for purposes of a Rule 12(b) motion. *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979) (citing *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977)). In addition, the plaintiffs must be given every favorable inference that may be drawn from their allegations of fact. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." 2A *Moore's Federal Practice,* § 12.07, at 63 (2d ed. 1986) (footnote omitted); *see Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987) (citing *Pauling v. McElroy,* 278 F.2d 252, 254 (D.C.Cir.), *cert. denied,* 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960)). Dismissal is only appropriate if it appears beyond doubt that no set of facts proffered in support of plaintiffs' claim would entitle them to relief. *Haynesworth,* 820 F.2d at 1254 (citations omitted); *Phillips,* 591 F.2d at 968.

## IV. FACA COMPLIANCE BY THE TRUST

Congress passed FACA in 1972 to reduce the proliferation of advisory committees and regulate existing committees. 5 U.S.C.A.App. 2, § 2(b)(1)–(6); *Public Citizen v. Department of Justice,* 491 U.S. 440, 445–46, 109 S.Ct. 2558, 2562–63, 105 L.Ed.2d 377 (1989). To guard against "inappropriate[ ] influence[ ] . . . by any special interest" group, *id.* § 5(b)(3), Congress mandated that committees subject to FACA comply with a variety of procedural requirements. First, in the case of Presidential advisory committees, they must be specifically authorized by the President. *Id.* § 9(a)(1). Notice of the establishment of the committee must be published in the Federal Register. *Id.* § 9(a)(2). Every committee must file a charter detailing, among other things, the committee's objectives, duties and anticipated duration. *Id.* § 9(c)(A)–(J). Meetings must ordinarily be open to the public, *id.* § 10(a)(1), and detailed minutes must be kept, *id.* § 10(c). To ensure that documents examined or generated by the committee are made available to the public, FACA makes the provisions of FOIA applicable to all advisory committee materials. *Id.* § 10(b).

For purposes relevant to this case, the Act defines an advisory committee as "any committee, board, commission, council, conference, panel, task force, or other similar group . . . established or utilized by the President . . . in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government. . . ." 5 U.S.C.A.App. 2, § 3(2).

The General Services Administration, pursuant to the authority granted under Section 7(c) of FACA, passed implementing regulations which expanded upon the statutory definition. In order to be subject to FACA, a committee must provide advice or recommendations "on issues or policies which are within the scope of [the President's] responsibilities." 41 C.F.R. § 101–6.1003.

■ The court finds that a trust established by a government officer in his personal capacity without use of public funds, and which renders absolutely no advice on official government policy, simply is not within FACA's scope. And because the Trust is neither an "advisory committee" under FACA nor a government agency, the disclosure provisions of FOIA are inapplicable. *See National Sec. Archive v. Archivist of the United States,* 909 F.2d 541, 545 (D.C.Cir. 1990) (FOIA applies only to government agencies and advisory committees).

A literalistic reading of § 3(2) of FACA would encompass "far more groups and consulting arrangements than Congress could conceivably have intended." *Public Citizen,* 491 U.S. at 464, 109 S.Ct. at 2572. To be sure, FACA is not a model of precise legislative craftsmanship. It is "an uncomfortably broad statute ... that would, if literally applied, stifle virtually all non-public consultative communication between policy making federal officials and a group of any two or more other people...." *Northwest Forest Resource Council v. Espy,* 846 F.Supp. 1009, 1010 (D.D.C.1994). For that reason, the Court of Appeals for this circuit has clarified and circumscribed the textual definition of an "advisory committee."

■ Within the meaning of FACA, an advisory committee must be a vehicle for transmitting policy advice. *Association of Am. Physicians & Surgeons, Inc. v. Clinton,* 997 F.2d 898, 913–14 (D.C.Cir.1993) ("AAPS"). An examination of the Act and its history confirms that Congress was concerned with formal committees organized to make recommendations as to an identified governmental

policy at the request of the President. *Nader v. Baroody,* 396 F.Supp. 1231, 1234 (D.D.C.1975). Even bi-weekly White House meetings to encourage an exchange of views between high public and private officials were insufficiently related to "policy" to satisfy the FACA standard. *Id.*

■ Here, the Trust does not advise the President on any public policy matter. Its functions are operational in nature. They include management and investment of trust property, compilation and dissemination of administrative records, and retention of attorneys and accountants and investment advisors. Allegations by the plaintiffs that the Trust is an advisor to the President on official matters of policy are not entitled to weight absent substantiation. "[B]are conclusions of law, or sweeping and unwarranted averments of fact" will not be deemed admissible in the context of a motion to dismiss. *Haynesworth,* 820 F.2d at 1254. The court will not be persuaded by conclusory allegations devoid of factual support. *Hobson v. Wilson,* 737 F.2d 1, 31 (D.C.Cir..1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

For example, paragraph 22 of the Amended Complaint asserts that the Trust advises the President and Mrs. Clinton on "ways and means to carry on their official duties." Paragraph 23 claims the Trust was established and is used "for the purpose of giving advice." Paragraph 28 declares that the Trust acts "in an official capacity." These averments are conclusory, and too generalized to validate a cause of action. Only in paragraph 27 do plaintiffs posit specific advice that the Trust provides to the President: "(a) on the legality of soliciting and accepting funds; (b) on the methods and procedures for soliciting and accepting funds; (c) on the methods and procedures of distributing and applying these funds; and (d) on the winding up of the Trust and distribution of remaining funds at the conclusion of the Trust." Even if true, this advice is personal and private; it cannot reasonably be characterized as pertaining to matters of official public policy.[5]

---

5. Likewise, the trust indenture contains no powers or functions that might be construed as advisory in nature on official matters of public policy.

■ Plaintiffs introduce several novel arguments in their opposition memorandum on the motion to dismiss. First, the Trust is subject to FACA because it was created to serve a public, governmental or official interest, and to assist the President in meeting a financial burden that could otherwise distract him from performing his public responsibilities. Yet, neither serving a public purpose nor providing assistance to the President is sufficient. Undoubtedly, personal matters may be a distraction for the President as they are for the rest of us. Nonetheless, parties who help the President deal with such matters are not thereby transmuted into an advisory committee. Unless the Trust renders "recommendations on an identified governmental policy for which specified advice was being sought," it is not subject to FACA. *Nader*, 396 F.Supp. at 1234. Merely exerting a generalized impact on public welfare is not enough. "FACA is limited to policy-laden deliberations." *Grigsby Branford & Co. v. United States*, 869 F.Supp. 984, 1001 (D.D.C.1994) (citing *Nader*, 396 F.Supp. at 1234).

■ Second, plaintiffs point to a letter from the Trust to OGE seeking an opinion on whether the Trust raised any concerns "for President Clinton in his official capacity." This, say the plaintiffs, is proof that the Trust renders advice on matters connected with the President's conduct of his duties. The court rejects this analysis. Plaintiffs fail to distinguish between two dissimilar types of assistance to the President. Of relevance for purposes of FACA is advice about matters of government policy that fall within the scope of the President's official duties. Quite different, and of no significance under FACA, is assistance as to personal matters, even if such matters have ethical implications arising inherently as a consequence of the President's position.

Third, plaintiffs contend that their complaint survives dismissal under Fed.R.Civ.P. 12(b)(6) because it is "overwhelmingly more detailed than the sample complaint contained in the leading treatise on FACA litigation." This argument is quite simply extraneous. There is no necessary correlation between minutia and merit, nor between prolixity and substance. The complaint fails because it has not made a colorable showing that the Trust is an advisory committee.

■ Fourth, plaintiffs assert that the Trust experienced a metamorphosis during which it was converted from an operational entity into an entity with "overwhelmingly" advisory functions. This conversion occurred when the Trust indicated, in a letter from trustee Cardozo to OGE, that it might review materials prepared by private citizens seeking donations. The trustees, the President and Mrs. Clinton had committed not to solicit contributions to the Trust. But Cardozo suggested that "the Trust will review, upon the request of others, information developed for their individual use, or for use in a direct mail campaign, which seeks solicitations for the benefit of the Trust." This new function is, however, immaterial. FACA governs groups "furnishing expert advice, ideas, and diverse opinions *to the Federal Government*," not to private citizens. 5 U.S.C.App. 2 § 2(a) (emphasis added). FACA only regulates advice running to the "President or one or more agencies or officers of the Federal Government." 5 U.S.C.App. 2 § 3(2). Moreover, any advice by the trustees to private citizens would relate to the manner in which funds may be raised, not to matters of government policy.

Finally, plaintiffs liberally invoke the health care task force decision, *AAPS*, 997 F.2d at 898, as their shibboleth. But the only commonality between *AAPS* and this case is that both involved the Clinton administration and the applicability of FACA. In *AAPS*, a group of individuals assembled to advise the President on health care reform—indisputably a matter of government policy. Here, by contrast, plaintiffs' FACA claim involves trustees who administer a private trust to help pay personal legal expenses incurred by the President and Mrs. Clinton. *AAPS* concerned the exemption under FACA for groups acknowledged to be functioning as an advisory committee, but whose members were all allegedly government employees. This case concerns a group which cannot under FACA be properly depicted as an advisory committee at all.

## V. FOIA COMPLIANCE BY OGE

Judicial Watch, Inc., pursuant to FOIA requests, sought information from OGE relating to creation and operation of the Trust. Some of the information was provided; some was not. The materials OGE withheld purportedly fell into two categories: (1) records related to the Trust but not characterizable as "agency records" as that term is used in FOIA; and (2) preliminary documents that reflect the thought processes of various agency officials, withheld under FOIA's Exemption 5, the deliberative process privilege. 5 U.S.C. § 552(b)(5). Plaintiffs reject both grounds for withholding. Indeed, plaintiffs "infer" bad faith by OGE, based upon OGE's alleged opportunistic behavior.

### A. Inference of Bad Faith

After considering the sequence of events that plaintiffs view with cynicism and suspicion, the court finds no basis for their inference that documents were wrongfully withheld. OGE responded to Klayman's July 19, 1994 FOIA request on July 21, several days before the end of the statutory period in which the agency had to respond. The next day, on July 22, OGE issued a written opinion on the legality of the Trust; the opinion was not included among the materials provided to Klayman. From this—which plaintiffs perceive as "gamesmanship" by OGE—plaintiffs infer that other documents were inappropriately withheld. Several facts rebut this inference.

■■■ First, the opinion concluded that the Trust would not violate applicable ethical principles governing executive branch employees; the opinion was not inculpatory. Second, OGE provided Judicial Watch with a courtesy copy of the opinion two weeks later on August 5, 1994. If OGE was conspiring with the Trust as alleged by plaintiffs, the initial non-disclosure did little to advance their insidious objectives. Third, OGE was not obligated to disclose the opinion under FOIA since it was not finalized on the date that Klayman's FOIA request was submitted. Even if OGE had not responded early, the opinion could have been withheld. The date of the request, not the date of the response, serves as the cutoff for any obligations under FOIA. *Church of Scientology of Texas v. Internal Revenue Serv.*, 816 F.Supp. 1138, 1148 (W.D.Tex.1993) (documents generated or obtained after date of request need not be disclosed). OGE deputy general counsel, Jane Ley, confirmed in her declaration that OGE's practice was to observe a date-of-request cutoff. Any other rule would impose significant administrative burdens as agencies struggled to respond to requests while concurrently searching for new documents to include up to the moment of the response.

Plaintiffs conclude, utterly without corroboration, that OGE's search for responsive records was somehow deficient and that discovery is thus warranted. Nothing in the record even intimates that the search conducted by the agency was in any way incomplete or in bad faith. The Ley declaration, factually undisputed by plaintiffs, states that the agency "conducted a thorough search of relevant files and checked via E-mail with all OGE staff for any responsive documents." Ley also notes that, after receiving plaintiffs' administrative appeal on July 28, 1994, the agency, even though it concluded it was not required to do so, provided additional documents not in the agency's possession at the time of Klayman's July 19 FOIA request.

■■■ Affidavits submitted by an agency are accorded substantial weight. *Lesar v. Department of Justice*, 636 F.2d 472, 481 (D.C.Cir.1980).[6] Mere unconfirmed allegations of bad faith will not undermine the agency's credibility. *Hayden v. National Sec. Agency*, 608 F.2d 1381, 1387 (D.C.Cir. 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). Nor can plaintiffs rely on unsupported inferences that other documents must have been created. *Safe-Card Servs., Inc. v. Sec. and Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C.Cir.1991) (agency affidavits accorded presumption of good faith; plaintiff cannot rebut affidavits by "purely speculative claims about the exis-

---

**6.** Jane Ley's declaration was not notarized, although it was subscribed as true under penalty of perjury. A federal statute specifically permits unsworn declarations to be utilized in all cases in which affidavits would otherwise be required. 28 U.S.C. § 1746.

tence and discoverability of other documents").

■ The contention by plaintiffs that OGE was required to provide a Vaughn Index is equally devoid of merit. The only statutory requirement applicable to an administrative agency under FOIA is that it inform the requester of its decision to withhold, along with the underlying reasons. 5 U.S.C. § 552(a)(6)(A)(i). Since Klayman's administrative appeal was still pending when plaintiffs filed their complaint in this court, OGE was under no obligation to furnish a Vaughn Index. Agencies need not provide a Vaughn Index until ordered by a court after the plaintiff has exhausted the administrative process. *SafeCard Servs., Inc. v. Sec. and Exchange Comm'n*, No. 84–3073, Slip op. at 3–5 (D.D.C. April 21, 1986), *aff'd in relevant part*, 926 F.2d 1197 (D.C.Cir.1991). In any event, the declaration of Jane Ley was adequate in this instance to meet the agency's obligation to justify its withholding. *Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 368 (11th Cir.1993) (agency need not produce Vaughn Index but may instead rely on declarations, especially when a small number of documents is involved).

## B. Agency Records

According to defendants, several types of withheld documents were not agency records and therefore not subject to disclosure under FOIA. In this category were telephone logs, calendar markings, personal staff notes and a transcript of Potts' testimony before Congress.

■ "Agency records" are defined as those documents created or obtained by an agency, and under agency custody and control at the time of a FOIA request. *Department of Justice v. Tax Analysts*, 492 U.S. 136, 144–45, 109 S.Ct. 2841, 2847–48, 106 L.Ed.2d 112 (1989). The D.C.Circuit has held that appointment calendars and telephone message slips of agency officials do not fall within the scope of FOIA. *Bureau of Nat'l Affairs v. Department of Justice*, 742 F.2d 1484, 1495–96 (D.C.Cir.1984) ("BNA"). The appointment calendars in *BNA* were used for both personal and official business, but were not embodied in any agency docu-

ment and not circulated generally to agency employees. The telephone message slips were intended for the personal use of the recipient and not incorporated into the agency recordkeeping system. These characteristics are consistent with corresponding documents withheld by OGE.

■ Even staff notes containing substantive information ordinarily need not be disclosed unless they are intended for distribution through normal agency channels or can be said to be within the "control or dominion" of an agency. *American Fed'n of Gov't Employees, Local 2782 v. Department of Commerce*, 632 F.Supp. 1272, 1277 (D.D.C. 1986), *aff'd*, 907 F.2d 203 (D.C.Cir.1990). In short, documents are typically not agency records under the Act unless and until they are included within material controlled, created, approved and utilized by the agency itself.

Plaintiffs argue in their opposition memorandum that the criterion for "agency records" is whether they were "used in the scope of OGE staff members' duties." This formulation has been rejected by the D.C.Circuit. "[T]he mere fact that the document in question 'relates to' the business of the agency does not by itself render it an agency record." *Gallant v. National Labor Relations Bd.*, 26 F.3d 168, 172 n. 2 (D.C.Cir. 1994). Even records used "to facilitate the individuals' performance of their official duties" were not subject to FOIA. *BNA*, 742 F.2d at 1495.

■ With respect to the transcript of Potts' testimony before Congress, it was provided to Potts solely for editing purposes and under a cover sheet indicating it was not to be released or distributed to any other person or entity. Normally, plaintiffs would have been able to access the finalized transcript once it was published by Congress. In an identical context, this court held that preliminary transcripts provided to a witness for editing are not agency records. *The Washington Post v. Department of Defense*, 766 F.Supp. 1, 17 (D.D.C.1991). Congress has not "abandoned control over a transcript released to witnesses from an agency for the limited purpose of correcting and amending."

*Id.* Even documents created by the agencies themselves may elude FOIA's reach if prepared on request of Congress with confidentiality restrictions. *Center for Nat'l Sec. Studies v. Central Intelligence Agency,* 577 F.Supp. 584, 589 (D.D.C.1983). Any such restrictions imposed by Congress would "manifest[ ] its own intent to retain control"; thus the document would not be in the custody of the agency. *Id.*

### C. Deliberative Process Privilege

Included in the second category of documents withheld by OGE were drafts of an agency memorandum that was never finalized, draft responses to a congressional inquiry, several pages of staff notes, and annotations on a copy of the Trust indenture. Each of these was withheld under the deliberative process exemption.

FOIA mandated that federal records be made available to any member of the public, subject to nine broad exemptions. 5 U.S.C. § 552(b)(1)–(9). The fifth of these nine exemptions protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with an agency." 5 U.S.C. § 552(b)(5). Courts have construed this fifth exemption to mean that an agency is permitted to withhold information associated with its deliberative, or decision-making, process. *See, e.g., Dudman Communications Corp. v. Department of the Air Force,* 815 F.2d 1565, 1567 (D.C.Cir.1987); *Mead Data Cent., Inc. v. Department of the Air Force,* 566 F.2d 242, 256 (D.C.Cir.1977).

▮ The deliberative process privilege contains three policy bases. *Jordan v. Department of Justice,* 591 F.2d 753, 772 (D.C.Cir.1978). First, the privilege protects candid discussions within an agency. *Id.* Second, it prevents public confusion from premature disclosure of agency opinions before the agency establishes final policy. *Id.* at 772–73. Third, it protects the integrity of an agency's decision; the public should not judge officials based on information they considered prior to issuing their final decisions. *Id.* at 773. Stated somewhat differently, the purposes of Exemption 5 are:

to assure that subordinates within an agency will feel free to provide the decision-maker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's actions.

*Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980).

▮ To qualify for Exemption 5, a record must meet a two-prong test. First it must be "pre-decisional," or created prior to adoption of agency policy; and second it must be "deliberative," or actually related to the process by which the policy was developed. *Jordan,* 591 F.2d at 774. Most of the controversy has centered on the "deliberative" prong.

Early FOIA decisions distinguished deliberative from purely factual information. *See, e.g., Environmental Protection Agency v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973). But in *Coastal States,* the court held that the deliberative process privilege did not exempt documents simply because they were deliberative on their face; the documents also had to reflect the "give-and-take" by which an agency made its decision. 617 F.2d at 866. On the other hand, apparently factual material may have deliberative implications. "It is not possible to resolve whether the information is deliberative by characterizing it ... as merely involving a factual request...." *Wolfe v. Department of Health and Human Servs.,* 839 F.2d 768, 774 (D.C.Cir.1988).

The deliberative-factual distinction has given way to more process-oriented considerations; i.e., the nature of the process is more significant than the nature of the materials. Exemption 5 was determined to encompass, for example, "recommendations, draft documents, proposals, suggestions and other subjective documents" because they represented only a personal opinion—one of numerous inputs in the evolution of an agency's final

position. *Coastal States,* 617 F.2d at 866. A determinative question seems to be whether release of material would harm candid discussions and thereby interfere with the ability of agencies to function effectively. *Dudman Communications,* 815 F.2d at 1568.

In this case, OGE asserts the deliberative process privilege for three classes of documents. First, OGE declined to disclose a preliminary staff analysis and ten versions of a draft memorandum from Potts to designated agency ethics officers. The proposed memorandum set forth a detailed policy evaluation which the agency ultimately elected not to issue. These materials are distinctively deliberative. Their disclosure would impede agency decision-making and create public confusion regarding the agency's rationale. This is especially true where, as here, the position under discussion is never formally issued. *See, e.g., Russell v. Department of the Air Force,* 682 F.2d 1045, 1048–49 (D.C.Cir.1982).

Reverting to the "pre-decisional" prong of Exemption 5, plaintiffs maintain in their opposition memorandum that these particular draft documents could not qualify, since no decision resulted from them. This is exalting semantics over substance. The determination not to issue a policy evaluation might itself be a final decision. Furthermore, although "many processes might not 'ripen into agency decisions,'" that does not preclude application of the deliberative process privilege. *Access Reports v. Department of Justice,* 926 F.2d 1192, 1196 (D.C.Cir.1991) (citation omitted). "[T]he exemption does not 'turn[ ] on the ability of the agency to identify a specific decision in connection with which a memorandum is prepared.'" *Id.* (citation omitted).

▮ Second, OGE withheld six preliminary drafts of a proposed response to a congressional inquiry.[7] Potts contends, and the court agrees, that this information in draft form represents the personal opinion of the author, not yet adopted as the final position of the agency, thus exempt from FOIA disclosure. *See Coastal States,* 617 F.2d at

866. Moreover, release of the drafts would inappropriately reveal many editorial judgments made by the agency during the review process. *See Dudman Communications,* 815 F.2d at 1568–69.

▮ Third, OGE retained handwritten notes reflecting preliminary thoughts of agency personnel, as well as underlining and commentary by agency staff on the Trust instrument and related documents. After redacting the commentary and underlining, the agency released a complete copy of the underlying documents. Disclosure of this type of deliberative material inhibits open debate and discussion, and has a chilling effect on the free exchange of ideas. *See Coastal,* 617 F.2d at 866.

At oral argument on February 13, 1995, counsel Klayman renewed his request for *in camera* inspection of documents that OGE withheld or redacted. Counsel for OGE, with the court's encouragement, agreed to the request. Thereupon, the court directed OGE to supply to chambers all documents alleged not to be "agency records," or otherwise exempt from disclosure under 5 U.S.C. § 552(b)(5). Where applicable, OGE was to indicate portions that were redacted on any copies provided to Klayman. The documents were produced in chambers on February 15, 1995 and examined in detail. Each document was in fact as described by OGE. The court is persuaded that OGE has properly invoked an exemption for non-agency records and a privilege for deliberative material.

## VI. CONCLUSION

The court finds that the Trust is not an advisory committee, and thus not subject to FACA or FOIA. This finding is dispositive with respect to Count 1 of the Amended Complaint. Further, the court finds no basis upon which to conclude that OGE responded improperly to plaintiffs' FOIA requests as alleged in Count 2.

A separate order shall issue this date.

---

7. The final version of the proposed response was released by OGE after plaintiffs' subsequent FOIA request.

## ORDER

This case comes before the court on motions by each of the defendants for dismissal or summary judgment, and a motion by plaintiff Judicial Watch, Inc. for a supplementary order concerning *in camera* inspection of documents and granting leave to amend its FOIA complaint. Upon consideration of the filings and oral argument of counsel, the relevant law, and for the reasons more fully set forth in a memorandum opinion issued by the court this date, it is hereby ORDERED that:

1. Defendant Clinton's motion for dismissal of Count 1 of the Amended Complaint is hereby GRANTED.

2. Defendant Mikva's motion for dismissal of Count 1 is hereby GRANTED.

3. The motion by the Trust and its trustees for dismissal of the Amended Complaint is hereby GRANTED.

4. Defendant Berman's motion for dismissal of the Amended Complaint is hereby GRANTED.

5. Defendant Potts' motion for summary judgment as to Count 2 is hereby GRANTED.

6. Plaintiff Judicial Watch's motion for a supplementary order concerning *in camera* inspection of documents and granting leave to amend its FOIA complaint is hereby DENIED. Local Rule 108(i) requires that a motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended. Because plaintiff's motion is not in compliance with Local Rule 108(i), because this case is ripe for decision and a delay of several weeks is unwarranted, and because the court finds no reason at this time to expand the scope of *in camera* inspection, the motion is denied. Plaintiff may of course pursue its new FOIA claim by filing another cause of action, which will be a related case under Local Rule 405(a)(4).

This action now stands DISMISSED WITH PREJUDICE.

SO ORDERED.