# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 08-1011 (RJL) |
| | ) | |
| U.S. DEPARTMENT OF STATE | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION
(September _3_ 2009) [# 10]

The plaintiff, Judicial Watch, has sued the U.S. Department of State (the

"government" or "State Department") for failing to disclose information pursuant to a

Freedom of Information Act ("FOIA") request. The State Department has filed a Motion

for Summary Judgment, asserting the information has been properly withheld under

exemptions to FOIA. For the following reasons, I agree and GRANT the State

Department's summary judgment motion.

## I.     Background

In April 2008, Judicial Watch sent a FOIA request, seeking information relating to

a Mexican drug smuggler who was shot in an incident involving two U.S. Border Patrol

Agents and relating to the agents' prosecution. (Compl. ¶ 5.) Specifically, Judicial

Watch sought: communications regarding the drug smuggler between the Department of

State and the Government of Mexico, between the Department of State and the

Department of Justice, and between the Department of State and the Department of Homeland Security; records of the Diplomatic Security Service regarding the two agents' prosecution, and information regarding the participation of Department of State personnel in facilitating the drug smuggler's later, lawful entry into the United States for the purposes of receiving medical treatment, meeting with federal prosecutors regarding his immunity, and testifying in the agents' trial. (Pl.'s Opp'n to Mot. for Summ. J. [Dkt. #13] at 3–4; Compl. ¶ 5.)[1] Judicial Watch believes the information it seeks may answer

---

[1] In full, Judicial Watch's FOIA request sought:

> a. Records detailing all contacts and communications between the Department of State (DOS) and any/all officers, agencies and/or representatives of the Government of Mexico concerning Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ramos and Compean over a shooting incident in Texas on February 17, 2005.
>
> b. Records detailing all contacts and communications between DOS and the U.S. Department of Justice, to include but limited to the Office of U.S. Attorney Johnny Sutton of the Western District of Texas, concerning Osbaldo Aldrete-Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ramos and Compean over a shooting incident in Texas on February 17, 2005.
>
> c. Records detailing all contacts and communications between DOS and the U.S. Department of Homeland Security (DHS), to include but not limited to subordinate DHS agencies, offices and components, concerning Osbaldo-Aldrete Davila, a Mexican national who testified in the prosecution of U.S. Border Patrol Agents Ramos and Compean over a shooting in Texas on February 17, 2005.
>
> d. Any and all records of the Diplomatic Security Service (DSS) regarding U.S. Border Patrol Agents Ramos and Compean and a shooting incident in Texas on February 17, 2005, to include but not limited to DSS activities detailed in a November 21, 2006 DHS Office of Inspector General Report.

questions regarding the prosecution, the involvement of the Mexican government, and the drug smuggler's receipt of prosecutorial immunity. (Pl.'s Opp'n to Mot. for Summ. J. at 2.) While the government was required to respond to the FOIA request by June 3, 2008, it had not responded as of June 12, when Judicial Watch filed this suit to compel production of the documents. (Compl. ¶ 8–9.)

In September 2008, the State Department produced forty-two documents in full and portions of seventeen additional documents. (Def.'s Mot. for Summ. J. [Dkt. #10] at 2–3; Decl. of Margaret P. Grafeld ("Grafeld Decl.") [Dkt. 10-2] ¶¶ 6–10.)[2] It withheld five documents, totaling ten pages, related to the individuals' entry into the United States. (Grafeld Dec. ¶ 19.) These documents were retrieved from a database used to determine whether the individuals are eligible for visas ("the visa database documents").[3] (*Id.*) The government withheld these documents on the basis that they fell within a FOIA exemption that allows for withholding if disclosure is prohibited by law. (*Id.*) Specifically, the government argues that the Immigration and Naturalization Act prohibits

---

e. The participation of DOS personnel in coordinating, facilitating, and/or approving the lawful entry(ies) of Osbaldo Aldrete-Davila into the United States. Mr. Aldrete-Davila reportedly entered the United States lawfully to obtain medical treatment, meet with federal prosecutors, and to testify in court in El Paso, TX.

(Pl.'s Opp'n to Mot. for Summ. J. at 3–4.)

[2]The government also disclosed an additional document on September 9, 2008, after review by the Department of Homeland Security. (Grafeld Decl. ¶ 10.)

[3]"Visa database documents" refers to documents V001 through V005 in the Grafeld Declaration.

disclosure of the visa database documents. (*Id.* ¶ 17–19 (citing 8 U.S.C. § 1202(f) and 5

U.S.C. § 552(b)(3)).)

Additionally, the State Department withheld two pages prepared by a Bureau of

Diplomatic Security Special Agent on July 27, 2007, as part of the internal preparation for

a State Department official's testimony relating to the shooting incident before a

congressional panel ("congressional hearing notes").[4] (Grafeld Decl. ¶¶ 28–29.)

Ultimately, the official did not disclose the information in the withheld portions of the

congressional hearing notes. (*Id.* ¶ 29.) Thus, the State Department concluded that the

documents were exempt from disclosure pursuant to the deliberative process privilege

FOIA exemption. (*Id.* ¶ 28–29); 5 U.S.C. § 552(b)(5).

## LEGAL STANDARD

"When assessing a motion for summary judgment under FOIA, the Court shall

determine the matter de novo." *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 598 F.

Supp. 2d 93, 95 (D.D.C. 2009) (citing 5 U.S.C. § 552(a)(4)(B)). De novo review of an

agency decision "requires the Court to 'ascertain whether the agency has sustained its

burden of demonstrating that the documents requested . . . are exempt from disclosure

under the FOIA.' " *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*,

334 F.3d 55, 57 (D.C.Cir.2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077,

---

[4]"Congressional hearing notes" refers to documents DS002, L013, and L014 in the Grafeld
Declaration, all of which contain the same information. (Grafeld Decl. ¶¶ 31–34.)

1080 (D.C.Cir.1998) (internal quotations omitted)). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In rendering its decision, a court will draw "all justifiable inferences" in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

FOIA embraces a general philosophy of full disclosure of Government records, unless information is specifically exempted by the Act itself. *Oglesby v. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996); *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973); *Judicial Watch, Inc.*, 598 F. Supp. 2d at 95. Exemptions from disclosure "must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act." *Vaughn*, 484 F.2d at 823.

## I.    The Visa Database Documents.

The State Department has withheld the visa database documents pursuant to Exemption (b)(3), (Grafeld Decl. ¶ 19), which allows withholding if another statute requires the documents to be withheld, and does so "in such a manner as to leave no discretion on the issue," 5 U.S.C. § 552(b)(3)(A).[5] In determining whether the

---

[5] Some of the visa database documents contain information not related to the drug smuggler, but related to individuals who have similar names. The government claims these documents are exempt under from disclosure under Exemption (b)(6), which permits withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted

government properly invoked this exemption, courts should "not closely scrutinize" the withheld documents' contents but rather determine only (1) "whether there is a relevant statute," and (2) "whether the document falls within that statute." *Perry-Torres v. U.S. Dep't of State*, 404 F. Supp. 2d 140, 143 (2005) (internal quotation and alternations omitted).

First, the relevant statute here is the Immigration and Naturalization Act, which prohibits the government from disclosing Department of State records that "pertain[] to the issuance or refusal of visas or permits to enter the United States." 8 U.S.C. § 1202(f). The statute prohibits disclosure "not only of the information supplied by the visa applicant, but also any information revealing the thought processes of those who rule on the application." *Perry-Torres*, 404 F. Supp. 2d at 143 (internal quotation omitted).

Second, the withheld information falls within the statute, as it was retrieved from a database used to determine visa eligibility and thus "pertain[s] to the issuance or refusal of visas." 8 U.S.C. § 1202(f). Indeed, Judicial Watch itself stated it "is only interested in the [visa database] documents to the extent that they provide information about how [the drug smuggler] himself obtained a visa or visas for entry into the United States," (Pl.'s Opp'n to Mot. for Summ. J. at 8–9), which is exactly the type of information of which the statute prohibits disclosure, *see* 8 U.S.C. § 1202(f).

---

invasion of personal privacy." 5 U.S.C. § 552(b)(6); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989). However, because Judicial Watch conceded it is not interested in the information the government is withholding under this Exemption, (Pl.'s Opp'n to Mot. for Summ. J. at 8–9), the Court will not address its applicability.

Judicial Watch, not surprisingly, argues that the government needs to provide additional information about these documents to justify withholding. (Pl.'s Opp'n to Mot. for Summ. J. at 7–8 (citing *Wiener v. FBI*, 943 F.2d 972, 892 (9th Cir. 1991)).) I disagree. The State Department not only described the general contents and purpose of the visa database, but it also described the documents individually. (*See* Grafeld Decl. ¶¶ 19 (describing the nature and purpose of the visa database), 35–41 (explaining the contents of each document).) Accordingly, sufficient information has been provided to determine that the statute prohibits the documents' disclosure.

Finally, the Court also finds the State Department properly considered whether portions of the documents are non-exempt and could be disclosed. *See Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 259–60 (D.C. Cir. 1977). The government, of course, has an obligation to reasonably segregate and disclose all non-exempt material, unless the material is "inextricably intertwined with exempt portions." *Id.* at 260. The State Department complied with its obligations here, having found that the documents may not be segregated and released because the records all "pertain in their entirety to visa issuance and refusal." (Grafeld Decl. ¶ 41.) As a result, the entire contents of the five visa database documents are exempt from disclosure.

## II.     The Congressional Hearing Notes.

Next, the State Department withheld notes taken in preparation for a congressional

hearing on the basis that the notes are covered by the deliberative process privilege and

thus Exemption (b)(5). I agree. 5 U.S.C. § 552(b)(5); (Grafeld Decl. ¶¶ 29, 31, 33, 34).[6]

The deliberative process privilege protects "any documents that reveal an agency's

deliberative process in reaching policy decisions," *Judicial Watch, Inc. v. U.S. Postal*

*Serv.*, 297 F. Supp. 2d 252, 258 (D.D.C. 2004), and notes taken by government officials,

such as the notes at issue here, are often made as part of the agency's internal

decisionmaking process, *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d

312, 321 (D.C. Cir. 2006). As our Court of Appeals has pointed out, notes tend to be

"selective and deliberative," and disclosing them would "hinder government officials

from debating issues internally, deter them from giving candid advice, and lower the

overall quality of the government decisionmaking process." *Id.* at 321; *see also Judicial*

---

[6]Alternatively, the State Department contends that the congressional hearing notes are properly withheld under Exemption (b)(7)(E), (Grafeld Decl. ¶¶ 26–27, 29), which permits the withholding of "records or information compiled for law enforcement purposes," to the extent that such information "would disclose techniques and procedures for law enforcement investigations or prosecutions," 5 U.S.C. § 552(b)(7)(E). As the government explains, the congressional hearing notes regard investigations of "criminal wrongdoing and administrative misconduct" by government employees. If the information were disclosed, the targeted employees would be able to "ascertain [the government's] interest" in and "thwart or interfere with" the internal investigation. (Grafeld Decl. ¶ 29.) Although Judicial Watch seeks from the government greater detail regarding the applicability of this exemption, requiring greater specificity would necessarily undermine the investigation. *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) (explaining the low threshold of establishing that information would "*risk* circumvention of the law" (quoting 5 U.S.C. § 522(b)(7)(E))). Consequently, the government has properly invoked Exemption (b)(7)(E) in withholding the congressional hearing notes.

*Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995). Although the harm of releasing the notes may be self-evident, agencies must nevertheless "provide a relatively detailed justification, specifically identifying the reasons why" the exemption applies to "the particular part of a withheld document." *Mead Data Central, Inc.*, 566 F.2d at 251.

While Judicial Watch contends that the government has failed to "demonstrate any *specific* harm" that would result if the congressional hearing notes were released, it need not do so. (Pl.'s Opp'n to Mot. for Summ. J at 15.) The State Department has not only provided sufficiently detailed information about the documents and its reason for withholding certain portions of the seven page document, (Grafeld Decl. ¶ 28–29), but also explained that "release of this information would reveal pre-decisional, deliberative processes and thoughts of the individuals who participated and assisted in the search for evidentiary material in this investigation," (*id.* ¶ 29). Additionally, "the withheld information reflects internal strategies and communications among agencies who were participating and assisting in the search for evidence in this investigation and prior to the completion of that search." (*Id.*) Based on this sufficiently detailed explanation, the Court finds the deliberative process exemption applies. *See Mead Data Central, Inc.*, 566 F.2d at 251.

Finally, the State Department complied with its obligations to consider the segregability of its congressional hearing preparation notes. It released portions of its notes, and it explicitly described the number and size of any withheld portions. It was

specific as to the title, printout date, and record of each document, (Grafeld Decl. ¶ 29), indicating that the government conducted individualized review of these documents line-by-line. In short, the State Department did its job properly.

## CONCLUSION

For these reasons, the Court finds the government has properly withheld information pursuant to FOIA exemptions, and the Court will GRANT the government's summary judgment motion. An order consistent with the foregoing accompanies this memorandum opinion.

RICHARD J. LEON
United States District Judge