**JUDICIAL WATCH, INC. and National Legal & Policy Center, Appellants,**

v.

**Hillary Rodham CLINTON, et al., Appellees.**

No. 95–5070.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1996.

Decided Feb. 23, 1996.

Larry E. Klayman, Washington, DC, argued the cause and filed the briefs, for appellants.

Daryl A. Libow, New York City, argued the cause, for appellees, with whom Thomas R. Leuba, Washington, DC, was on the brief. David E. Kendall and Nicole K. Seligman, Washington, DC, were on the brief, for appellee Hillary Rodham Clinton. Frank W. Hunger, Assistant Attorney General, United States Department of Justice, Eric H. Holder, Jr., United States Attorney, and Mark B. Stern, Attorney, Washington, DC, were on the brief, for appellees John M. Quinn and Stephen D. Potts. Ky E. Kirby, Washington, DC, was on the brief, for appellee Michael Berman.

Before: SILBERMAN, BUCKLEY, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Judicial Watch appeals the dismissal of its claim that the Presidential Legal Expense Trust Fund must comply with the requirements of the Federal Advisory Committee Act, 5 U.S.C. app. 2 (1982), and must return all funds collected while in violation of the Act. The district court determined that the Trust is not a federal advisory committee. We affirm.

## I.

President and Mrs. Clinton established the Trust in order to help defray personal legal fees and related expenses incurred by the President in legal proceedings commenced after he assumed office but unrelated to any of his official duties. The Trust is administered by nine individuals who serve without compensation and who are authorized to hold, manage, and invest the funds contributed and to pay the Clintons' legal fees as necessary. When the Trust was established, several public announcements were made by White House Press Secretary Dee Dee Myers and others to the effect that defraying these legal expenses was in the best interest of the country and the presidency. Both

before and after the public announcement, attorneys involved in developing the Trust and members of the Office of Government Ethics (Office) discussed the legal and ethical propriety of the Trust, and the Office subsequently issued a letter determining that the Trust is proper.

Judicial Watch filed suit against the Trust, the trustees, Hillary Rodham Clinton, the Office, and Michael Berman—whom Judicial Watch termed a "de facto" trustee—seeking a declaration that the Trust is an advisory committee and injunctive relief prohibiting further actions by the Trust pending compliance with the Act and requiring the Trust to return all funds collected. The district court dismissed the complaints on the grounds that the Trust is not an advisory committee within the meaning of the Act because it does not transmit advice on particular public policy matters and its functions are primarily operational.

## II.

The statute defines an advisory committee as including "any committee, board, commission, council, conference, panel, task force, or other similar group ... which is ... established or utilized by the President ... in the interest of obtaining advice or recommendations for the President...." 5 U.S.C. app. 2 § 3(2). Appellants claim that the Trust easily fits into the broad language of the Act. Moreover, with an eye to our precedents that have read implicit limitations into that language, appellants insist that the Trust's functions are *primarily* advisory and that the Trust was established for a governmental purpose and provides public policy advice. President and Mrs. Clinton created the Trust, it is alleged, in order to assist the President in performing his official duties by reducing the distraction of his financial obligations; and the public statements introducing the Trust reveal its official, governmental role. The Trust and trustees provide advice to the President, as well as to third parties, on the legality of and the methods for soliciting and distributing funds.

We think the government and the Trust are likely correct that the Trust is not pri-

marily advisory in nature. Its main purpose would appear to be the collecting and managing of funds, and therefore even if some advice is forthcoming, the Trust would seem to be outside the statute. *See Sofamor Danek Group, Inc. v. Gaus,* 61 F.3d 929, 934 (D.C.Cir.1995); *Public Citizen v. Commission on the Bicentennial,* 622 F.Supp. 753, 757–58 (D.D.C.1985). But even assuming the advice given were thought to be the Trust's primary activity, our conclusion—that it is not an advisory committee—would be the same because the advice called for is not directed to governmental policy.

That the statute is only intended to reach committees that offer policy advice is apparent from the requirement that such a committee's membership be "fairly balanced in terms of the points of view represented" and not "inappropriately influenced by the appointing authority or by any special interests." 5 U.S.C. app. 2 § 5(b)(2)–(3). Whether or not that provision is judicially enforceable, *see Public Citizen v. National Advisory Comm.,* 886 F.2d 419, 426 (D.C.Cir.1989) (*compare* Silberman, J., concurring *with per curiam*), it surely indicates that Congress had in mind committees, the members of which would provide varying points of view; and that necessarily implies *debatable policy issues.* Accordingly, we have recognized that the Act is limited to committees that provide advice on an identified governmental policy. *See Sofamor,* 61 F.3d at 935–37; *Association of Am. Physicians v. Clinton,* 997 F.2d 898, 914 (D.C.Cir. 1993); *Nader v. Baroody,* 396 F.Supp. 1231, 1234 (D.D.C.1975).

Nevertheless, appellants contend that the advice given to the President as to the ethics and legality of methods to solicit funds for his legal expenses has an undeniable governmental, and therefore public policy, interest. In part, their argument is based on the notion that any private service to the President allows him to devote more time to governmental affairs. We think that argument, to put it kindly, sweeps too far; it suggests that a group that advised the President where to find a summer house would be an advisory

committee. But in part, appellants claim that there is an obvious public interest in confining the President's solicitations of funds to legal and ethical means.[1] That is, of course, true, but even assuming that the Trust provides such advisory services, it cannot be thought public policy advice.

The term "policy" implies choice; advice on an identified government *policy* is necessarily advice which favors one of alternative positions or courses of action. The function of a group giving such advice is thus to aid the decision makers in choosing the direction of government behavior. In contrast, whether a particular government official's or his agents' activities comply with legal and ethical obligations does not present such a free choice. We normally assume that there is an objective answer to whether such person's actions are legal or ethical—even though we might disagree on what it is—and that answer constrains choice. Advice on the legal or ethical implications of presidential fundraising for personal purposes therefore does not involve "policy," even though the problems presented might implicate governmental concerns.

\* \* \* \* \* \*

The district court's dismissal of the complaint is therefore

*Affirmed.*

---

1. To the extent this claim rests on the notion that the Trust's determination of the legal and ethical propriety of its own activities—*i.e.*, consultation with the Office and discussions with the President and his advisers—constitutes policy advice, we think the argument unsound. Any committee must, whether explicitly or implicitly, assess its legal and ethical obligations, but, as discussed below, such an assessment is not policy advice. Further, such advice generally will not make a committee, without more, primarily advisory in nature.