**JUDICIAL WATCH OF FLORIDA, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

No. Civ.A. 97–2869 (RMU).

United States District Court, District of Columbia.

Feb. 22, 2000.

8

Paul J. Orfanedes, Klayman & Associates, P.C., Washington, DC, for Plaintiff, Judicial Watch of Florida.

Martha Hirschfield, U.S. Dept. of Justice, Civ. Div., Washington, DC, for Defendant, U.S. Dept. of Justice.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### Granting in part and Denying in part the Defendant's Motion for Partial Summary Judgment

### I. INTRODUCTION

This matter comes before the court on the defendant's motion for partial summary judgment. This is an action brought by Judicial Watch of Florida ("JWF"), a non-profit corporation incorporated in the District of Columbia, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In July 1997, JWF filed a FOIA request "seeking access to any and all documents relating to Attorney General Reno's decision" not to appoint an independent counsel to investigate allegations that the Clinton/Gore administration had violated federal campaign-finance laws. *See* Orfanedes Decl. dated October 4, 1999 at 3, Ex. 3. The defendant, the United States Department of Justice ("DOJ"), moves for summary judgment with respect to all of the requested records which it has withheld or redacted, save for those in the

possession of the Federal Bureau of Investigation ("FBI").[1] For the reasons that follow, the court will grant in part and deny in part DOJ's motion. The court also will order DOJ to conduct a supplemental search because DOJ gave an unduly narrow construction to JWF's FOIA request when it conducted its initial search.

## II. BACKGROUND

On March 28, 1997, Judicial Watch, Inc. ("Judicial Watch"), filed a FOIA request with DOJ ("the Judicial Watch request"). On April 21, 1997, Judicial Watch filed suit against DOJ for failure to produce all of the information sought in the FOIA request. On July 15, 1997, the plaintiff JWF, a related but separate organization, filed a FOIA request with DOJ ("the JWF request"). The JWF request asked for many of the same categories of materials as the Judicial Watch request. On July 30, 1997, JWF filed the instant suit to effectuate compliance with its July 15 request. On August 6, 1997, Judicial Watch's action was voluntarily dismissed.

DOJ's Office of Information and Privacy ("OIP") and other agencies in possession of records requested by Judicial Watch and JWF withheld and redacted some of the responsive records. DOJ treated those parts of the JWF request that repeated Judicial Watch's earlier request as an update of the earlier request. In other words, DOJ interpreted the JWF request to cover only documents created in the period between the receipt of the two requests (March 28 – July 15, 1997).

By order dated June 3, 1999, this court ordered DOJ to provide *Vaughn* indices for documents in the possession of OIP and the Executive Office for United States Attorneys ("EOUSA"). DOJ filed the indices on June 15, 1999 ("the June 1999 *Vaughn* indices").

DOJ now moves for summary judgment with respect to all records sought by JWF's July 15, 1997 request that DOJ withheld or redacted, save for those in the possession of the FBI. In support of its motion, DOJ relies upon FOIA exemptions five, six and seven. *See* 5 U.S.C. §§ 552(b)(5), (6) and (7).

## III. LEGAL STANDARD

Summary judgment shall be granted if the record before the court (including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits supporting and opposing the motion) shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Crawford v. Signet Bank,* 179 F.3d 926, 928 (D.C.Cir.1999), *cert. den.,* —— U.S. ——, 120 S.Ct. 1002, 145 L.Ed.2d 945 (2000). A fact is material if its existence or nonexistence might affect the outcome of the action. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Farmland Indus. v. Grain Board,* 904 F.2d 732, 735–36 (D.C.Cir.1990). There is no genuine issue as to a material fact if the record presented on motion, taken as a whole, could not lead a rational trier of fact applying the relevant burden of proof to find for the non-moving party. *See Anderson,* 477 U.S. at 248, 254–55, 106 S.Ct. 2505; *Brees v. Hampton,* 877 F.2d 111, 117 (D.C.Cir.1989), *cert. den.,* 493 U.S. 1057, 110 S.Ct. 867, 107 L.Ed.2d 951 (1990). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Martin v. D.C. Metropolitan Police Dept.,* 812 F.2d 1425, 1435 (D.C.Cir.

---

1. By order dated August 25, 1998, this court granted the FBI an *Open America* stay, affording the FBI until June 8, 2000 to respond to JWF's request.

1987), *vac'd in pt o.g.*, 817 F.2d 144 (D.C.Cir.), *reinstated on recon. o.g.*, 824 F.2d 1240 (D.C.Cir.1987).

A district court reviews *de novo* an agency's denial of a FOIA request and the burden is on the agency to show that each disputed withholding or redaction was proper under FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *King v. U.S. Dept. of Justice*, 830 F.2d 210, 217 (D.C.Cir. 1987).

## IV. ANALYSIS

### A. Scope of the JWF Request

■ By the terms of the complaint, this action pertains to the FOIA request that JWF filed on July 15, 1997. That request repeated requests for certain categories of records that were requested by Judicial Watch, Inc. in its March 28, 1997 FOIA request. DOJ treated the parts of the JWF request that overlapped with the Judicial Watch request as merely updating the Judicial Watch request. In other words, DOJ construed the JWF request as a request only for records in the repeated categories which were created between the receipt of the Judicial Watch request (April 19, 1997) and the JWF request (July 18, 1997). The JWF request was not so temporally limited by its own terms. JWF argues that its request was improperly treated as an update to the extent it overlapped with the Judicial Watch request. The court agrees that DOJ's construction of JWF's request was unduly narrow. The court concludes that JWF's broader construction of the request is more appropriate.

Under FOIA, an agency must disclose all nonexempt records requested by "any person." 5 U.S.C. § 552(a)(3); *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C.Cir.1989), *cert. den.*, 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990). A corporation is a person entitled to make FOIA requests. *See* 5 U.S.C. § 551(2) (which includes "corporations" in the definition of the term "person" for purposes of the Administrative Procedure Act, of which 5 U.S.C. § 552(b)(4) is a part). Judicial Watch and JWF are separate corporations, and each is entitled to request documents under FOIA in its own right.

DOJ argues that it was complying with the law when it chose to treat the JWF request as updating the Judicial Watch request to the extent the two requests asked for the same categories of records. (Reply at 6, 7 n. 4, citing 28 C.F.R. § 16.10(f)). Title 28 C.F.R. § 16.10(f) provided that where an agency "reasonably believes that a requester or a group of requesters acting in concert is attempting to divide a request into a series of requests for the purposes of evading the assessment of fees," the agency "may aggregate any such requests and charge accordingly." 28 C.F.R. § 16.10(f). This regulation is inapposite. Aggregating related requests which were divided by requesters who acted in concert to evade fees is *not* the same thing as taking similar requests by two separate entities and treating one as merely updating the other. DOJ provides no foundation for believing that Judicial Watch and JWF acted in concert to evade fees by subdividing a single request into multiple requests. Indeed, the two requests did not subdivide related requests but rather *duplicated* requests, an action poorly calculated to avoid fees.

Since JWF's FOIA request was not properly limited to the period after the receipt of Judicial Watch's request, all documents requested by JWF and withheld or redacted are within the scope of this action. Not all of these withholdings and redactions are before the court on the instant motion. The motion covers only those withholdings and redactions listed in DOJ's *Vaughn* indices. *See Lykins v. U.S. Dept. of Justice*, 725 F.2d 1455, 1463 (D.C.Cir.1984) (The index "enables the trial court to fulfill its duty of ruling on the

applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court."). The *Vaughn* indices submitted by DOJ in June 1999 catalog only those records withheld or redacted from the categories of records requested by JWF under DOJ's unduly narrow interpretation of the JWF request. The indices thus do not address records that were (1) requested in both the Judicial Watch and JWF requests and (2) created before April 19, 1997, the date DOJ received the Judicial Watch request. Accordingly, the court will order DOJ to conduct a second search in response to JWF's FOIA request. In this second search, DOJ will search for all documents created before April 19, 1997 which could be responsive to JWF's request. If this second search yields responsive documents, DOJ is also required to produce such documents or submit *Vaughn* indices which state the grounds for each decision to withhold or redact any such documents.

With respect to the withholdings and redactions listed in DOJ's June 1999 *Vaughn* indices, DOJ's motion will be granted in part and denied in part, as follows.

### B. Commerce Document Withheld Pursuant to Exemptions 3 and 5

■ The Department of Commerce withheld a document that DOJ describes as "a document prepared *by* an Office of Inspector General ["OIG"] investigator to summarize evidence obtained by that office in conjunction with a criminal investigation." (Mot. for Part.S.J. at 15–16) (emphasis added). Elsewhere, DOJ describes the same document as one sent "*by* the Assistant U.S. Attorney *to* an attorney in the [OIG] ... summariz[ing] evidence in an ongoing criminal investigation, in which the OIG has been participating under the direction of the DOJ Campaign Finance Task Force." (Declaration of Brenda Dolan dated Aug. 27, 1999 ("Dolan Decl.") ¶ 9) (emphasis added). DOJ contends this document was properly withheld under FOIA exemption three, which provides for the exemption of "matters that are ... specifically exempted by statute...." 5 U.S.C. § 552(b)(3). In its reply memorandum, DOJ states, "Commerce has now determined that this document does not require protection under Exemption 3." (Reply at 10–11). The reply argues instead that the document was properly withheld under the attorney-client privilege (FOIA exemption five) and states that "JWF ... has not contested defendant's claim of Exemption 5 with respect to this document." (Reply at 11). JWF's failure to so contest is understandable. Nowhere in DOJ's current motion for partial summary judgment does it argue that the Commerce document was properly withheld under exemption five, and the June 1999 *Vaughn* index does not clearly describe this document and the basis for its withholding.[2]

There *is* a section of the motion which argues that "Commerce properly withheld documents under FOIA Exemption 5's ... Attorney–Client Privilege" (Mot. for Part. Summ.J. at 23), but that section does not address the reason for the withholding of this particular Commerce document.[3] Therefore, DOJ's argument that the Commerce document was properly withheld

---

2. The closest indexed document is an "[i]nter-agency memorandum, dated 8/6/96 from AUSA ... to DOC/OGC ... [which] discusses the evidence in the case...." The court reads this, however, as describing a document sent to Commerce's Office of General Counsel ("OGC"), not a document sent to an attorney in Commerce's Office of the Inspector General.

3. That section of DOJ's motion memorandum addresses only the documents described in paragraph six of the Supplemental Dolan Declaration. The withholding of the Commerce document is described in paragraph nine of that declaration, not paragraph six.

under exemption five is newly raised in DOJ's reply.

It is not proper to raise new issues in a reply, because the party opponent is thereby denied an opportunity to respond. *See McBride v. Merrell Dow and Pharmaceuticals, Inc.*, 800 F.2d 1208, 1211 (D.C.Cir. 1986) ("[c]onsidering an argument advanced for the first time in a reply brief ... is not only unfair ... but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered"). The court therefore declines to consider DOJ's argument that the Commerce document was properly withheld pursuant to Exemption 5. *Id.*

In summary, DOJ has withdrawn its Exemption 3 argument as to the Commerce document and the court declines to consider its newly raised Exemption 5 argument at this time. Accordingly, the court will deny DOJ's motion for summary judgment without prejudice[4] as to the Commerce document.

### C. Attorney General Notes Withheld Pursuant to Exemption 5, Deliberative–Process Privilege

#### 1. The Deliberative Process Privilege Under Exemption 5

▮ JWF challenges DOJ's decision to withhold ten pages of notes handwritten by the Attorney General during meetings regarding DOJ's Campaign Finance Task Force ("the AG notes"). DOJ contends the AG notes were properly withheld pursuant to the deliberative process privilege under FOIA Exemption Five. Exemption Five exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). For the reasons which follow, the court will grant summary judgment to DOJ as to these notes.

"Exemption 5 incorporates the privileges which the Government enjoys under the relevant statutory and case law in the pretrial discovery context. . . ." *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 184, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975). In other words, exemption five exempts from disclosure "documents which a private litigant could not obtain against the agency through normal discovery rules." *Poll v. United States of Special Counsel*, 198 F.3d 258, 1999 WL 820241, *2 (10th Cir.) (citing *Grand Central Partnership v. Cuomo*, 166 F.3d 473, 481 (2d Cir.1999)), *amended and superseded o.g.*, 2000 WL 14422, 208 F.3d 226 (10th Cir.1999). This exemption encompasses the traditional attorney-client and work-product privileges, as well as an executive "deliberative process" privilege designed to protect internal memoranda from public disclosure. *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1082, 1084 (9th Cir.1997). DOJ contends that this deliberative privilege exempts the AG notes from disclosure, and the court agrees.

▮ The deliberative process privilege protects agency documents which are both [1] predecisional, i.e., antecedent to the adoption of an agency policy, *see Jordan v. U.S. Dept. of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978); *accord Natural Resources Defense Council, Inc. v. Fox*, 1998 WL 158671, *3 (S.D.N.Y.1998); and [2] deliberative, in that they make recommendations or express opinions on legal or policy matters. *See Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975). *Accord Missouri v. United States Army Corps of Engineers*, 147 F.3d 708, 710 (8th Cir. 1998). A document's predecisional character is not altered by the fact that the agency has since made a final decision. *See Federal Open Market Committee v.*

---

4. DOJ will be free to raise exemption 5 as its ground for withholding the Commerce document in a future motion for summary judgment, when JWF will have a proper opportunity to respond.

*Merrill,* 443 U.S. 340, 360, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979). A predecisional document is part of the deliberative process if its disclosure would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions. *See Formaldehyde Institute v. Department of Health and Human Services,* 889 F.2d 1118, 1122 (D.C.Cir.1989); *cf. Mobil Oil Corp. v. U.S. Environmental Protection Agency,* 879 F.2d 698, 703 (9th Cir. 1989) (draft document covered by deliberative-process privilege, because effect of disclosure "would be to expose what occurred in the deliberative process between the draft's creation and the final document's issuance"). In other words, the deliberative privilege ensures that government agencies are not "forced to operate in a fishbowl." *See Environmental Protection Agency v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Wolfe v. Department of Health and Human Services,* 839 F.2d 768, 773 (D.C.Cir.1988) (*en banc*). The privilege also "protects the integrity of an agency's decision; the public should not judge officials based on information they considered prior to issuing their final decisions." *Judicial Watch v. Clinton,* 880 F.Supp. 1, 12 (D.D.C.1995), *aff'd,* 76 F.3d 1232 (D.C.Cir.1996).

In determining whether DOJ properly invoked exemption five,[5] the court may forgo discovery and assess the issue on the basis of affidavits submitted by the government. *See Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. den.,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). DOJ's declarations state that the A.G. notes are nonsegregable, predecisional and deliberative. (Pustay Dec. ¶ 26). Likewise, the *Vaughn* index filed by DOJ on

June 15, 1999 states that the Attorney General's notes "contain no segregable information." *See* 6/99 *Vaughn* Index at 4, ¶ 17. JWF contests none of these assertions of fact, nor any others which are material to the applicability of the deliberative-process privilege under exemption five. *Cf. Poll v. United States Office of Special Counsel,* 1999 WL 820241, *3 (10th Cir.1999), *as amended,* 2000 WL 14422 (10th Cir.1999) (relying on government agency's affidavit in affirming district court's ruling that deliberative-process privilege applied to internal memoranda). As discussed below, JWF provides no basis for the court to refuse to credit DOJ's affidavit or otherwise apply the deliberative-process privilege to the AG's notes. *Cf. U.S. E.E.O.C. v. Windsor Court Hotel, Inc.,* 1999 WL 407610, *1 (E.D.La.1999) ("The court has no reason to believe, nor has [the party opposing the privilege] shown any reason why the EEOC's privilege log is inaccurate or deceptive. Therefore, the court deems these documents privileged.").

### 2. Whether the Deliberative–Process Privilege Can Apply to Uncirculated Notes Reflecting Decisionmaker's Thoughts

■ JWF contends that the AG's notes are not privileged because they were not communications, because "the notes were not circulated to anyone else" and "did not record any 'give-and-take' or other deliberative communications." (Opp. to Mot. for Part.Summ.J. at 14). JWF fails to provide any authority for the proposition that a document must be shared with another or record communications in order to fall under the deliberative process privilege. This proposition is dubious under the circumstances here presented.

---

**5.** Outside the FOIA context, the courts engage in an ad hoc balancing of the evidentiary need for allegedly privileged documents against the harm that may result from disclosure. *See In re Sealed Case,* 116 F.3d 550, 558 (D.C.Cir.) (citations omitted), *superseded o.g.,* 121 F.3d 729 (D.C.Cir.1997). "This characteristic of

the deliberative process privilege is not an issue in FOIA cases." however, "because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." *In re Sealed Case,* 116 F.3d at 558 n. 5 (citations omitted).

It may be that documents withheld under the deliberative-process privilege are typically communications between agency employees. Under appropriate circumstances, however, the purpose of the privilege may also be served by exempting documents which the agency decisionmaker herself prepared as part of her deliberation and decisionmaking process. After all, the purpose of the deliberative privilege is to afford government officials not only the freedom to *"debate* alternative approaches in private," but also the "freedom to" deliberate.[6] *See Sealed Case,* 121 F.3d at 738; *Hopkins v. U.S. Dept. of Housing & Urban Development,* 929 F.2d 81, 84–85 (2d Cir.1991) (privilege applies to documents "reflecting advisory opinions, recommendations *and deliberations* comprising part of a process by which government decisions and policies are formulated"). An agency decisionmaker can deliberate, and record her deliberations, without the help of an agency employee, as the Attorney General did here. Indeed, language in persuasive authority suggests that the involvement of a second person is not a *sine qua non* for a document to have "deliberative" status under exemption five. Rather, "A document is ... deliberative when it is 'actually related to the process by which policies are formulated' and decisions are made." *Poll v. United States Office of Special Counsel,* 1999 WL 820241, *3 (10th Cir.1999) (quoting *Grand Central Partnership v. Cuomo,* 166 F.3d 473, 482 (2d Cir.1999)); *see also CNA Financial Corp. v. Donovan,* 830 F.2d 1132, 1161 (D.C.Cir.1987) ("the pertinent element is the role, if any, that the document plays in the process of agency deliberations"); *Assembly of California v. United States Dep't. of Commerce,* 968 F.2d 916, 920–21 (9th Cir.1992) ("focus is on whether document is part of agency's deliberative process").

Notes taken by the Attorney General *at a meeting regarding the campaign-finance task force itself* certainly are "actually related to the process by which" she reached her decision not to appoint an independent counsel on campaign finances. Specifically, DOJ attests that the "notes reflect the Attorney General's distillations of issues that she believed were important at the time of their discussion and which she wished to memorialize for later reference." *See* Putsay Dec. ¶ 26. Thus, the notes could reveal how the AG prioritized different facts and considerations in deliberating whether or not to appoint an independent counsel. As the D.C. Circuit has cautioned, "[I]n some cases selection of facts or summaries may reflect a deliberative process which exemption 5 was intended to shelter." *Montrose Chemical Corp. v. Train,* 491 F.2d 63, 71 (D.C.Cir.1974); *see, e.g., Williams v. U.S. Dept. of Justice,* 556 F.Supp. 63, 65 (D.D.C.1982) (factual summaries written in the course of preparing a prosecution "by their nature ... unavoidably disclose the nature of the deliberations in progress"). Disclosure of the AG's notes could also reveal her interpretation of public policies which she deemed relevant to her exercise of her judgment on the appointment of an independent counsel. *See Hennessey v. USAID,* 121 F.3d 698, 1997 WL 537998, *2 (4th Cir.1997) ("The ultimate issue in evaluating any deliberative process privilege claim is 'whether the materials bear on the formulation or exercise of agency policy-oriented judgment....' ") (quoting *City of Virginia Beach, Va. v. U.S. Dept. of Commerce,* 995 F.2d 1247, 1254 (4th Cir.1993)).

6. A second purpose of the privilege is to "protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action...." *Tax Analysts v. IRS,* 117 F.3d 607, 618 (D.C.Cir.1997) (citation omitted). This purpose, too, would be thwarted if the court compelled disclosure of the AG's notes. DOJ attests that the notes "convey information only about [the Attorney General's] preliminary thinking processes.... [her] initial and incomplete thoughts concerning campaign finance matters...." *See* Pustay Dec. ¶ 26.

The fact that the Attorney General did not send her notes to one of her subordinates does not alter the fact that her notes are directly related to her decisionmaking process.[7] Nor does it undermine the importance of affording the Attorney General the freedom to record her predecisional deliberations without the fear that those deliberations will be publicly disclosed. As the Supreme Court has observed, "Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *United States v. Nixon*, 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Under these circumstances, it is reasonable to expect that compelled public disclosure of the Attorney General's personal notes would have just such a chilling effect on free deliberation.

### 3. Applicability of the Government–Misconduct Exception to the Deliberative–Process Privilege

■ Judicial Watch argues that it is the agency's burden to demonstrate that a document withheld under the deliberative process privilege does not reveal any government misconduct, and that DOJ has failed to carry that burden here. JWF fails to provide legal support for this argument. It is true that "where there is reason to believe the documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In re Sealed Case*, 121 F.3d 729, 738

(D.C.Cir.1997); *see also In re Subpoena Served upon Comptroller of the Currency*, 967 F.2d 630, 634 (D.C.Cir.1992). There is no authority before the court, however, to support the proposition that the burden is upon the government to prove a negative, i.e., to prove in the first instance that a document does *not* reveal any government misconduct. The court declines to create such a burden.

JWF may sincerely believe that the Attorney General's decision not to appoint an independent counsel to investigate the Clinton/Gore campaign-finance controversies was improperly motivated or influenced. The court expresses no opinion on that matter. JWF, however, has failed to provide an adequate basis for believing that the A.G.'s notes would shed light upon government misconduct. The section of JWF's opposition brief which addresses the withholding of the AG notes mentions the government-misconduct exception but then makes no attempt to provide evidence suggesting the notes would reveal such misconduct. *See* Opp. to Mot. for Part. Summ.J. at 12–14. The absence of such evidence is significant, because "inquiry into the mental processes surrounding agency decision making has been held proper only where there has been no explanation ... for the agency action in issue or where there has been the requisite showing of improper behavior." *Natural Resources Defense Council v. Fox*, 1998 WL 158671, *6 (S.D.N.Y.1998) (citing, *inter alia*, *Checkosky v. SEC*, 23 F.3d 452, 489 (D.C.Cir.1994)); *see also Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 458 (D.C.Cir.1994) (discovery of mental processes of agency decisionmakers permissible when "there has been a strong

---

7. *Cf. Students Against Genocide (SAGE) v. Department of State*, 1998 WL 699074, *12 (D.D.C.1998) (in FOIA action seeking documents related to U.S. policy in Bosnia, deliberative-process privilege exempted "47 pages of handwritten notes, ripped from a spiral notebook, containing notes of conversations with refugees and other local officials, together with analysis by the author regarding the information gathered"); *U.S. E.E.O.C. v. Windsor Court Hotel, Inc.*, 1999 WL 407610, *1 (E.D.La.1999) ("A[n] EEOC investigator's *personal notes* and evaluations, as well as interagency communications and critiques, fall within the deliberative process privilege") (citing *Scott v. PPG Industries, Inc.*, 142 F.R.D. 291, 292 (N.D.W.Va.1992)) (emphasis added).

showing of bad faith or improper behavior").

As the D.C. Circuit has emphasized, "a motion for summary judgment adequately underpinned is not defeated simply by bare opinion or an unaided claim that a factual controversy persists." *Alyeska Pipeline Service Co. v. U.S. E.P.A.*, 856 F.2d 309, 313–14 (D.C.Cir.1988). JWF has failed to provide a the requisite "discrete factual basis" for believing that the notes could shed light on government misconduct. *Contrast Alexander v. FBI*, 186 F.R.D. 154, 164–66 (D.D.C.1999) (presence of misinformation in earlier drafts of executive-branch officials' statements to Congressman on same topic, the Clinton Administration's allegedly improper use of Reagan/Bush appointees' FBI files, provided basis to believe documents would shed light on government misconduct). Accordingly, the court finds that there is no basis for invoking the government-misconduct exception to the deliberative-process privilege. *Cf. Hinckley v. United States*, 140 F.3d 277, 285–86 (D.C.Cir.1998) (holding government-misconduct exception inapplicable); *Walker v. City of New York*, 1998 WL 391935 (S.D.N.Y.1998) (same).

■ JWF also asserts, without authority, that the privilege should end after deliberations have ended and a decision has been rendered. (Opp. at 14). JWF's argument that "[n]o purpose is served by withholding 'deliberative process' documents years after the deliberations have finished and a decision has been rendered" (Opp. at 14) is unpersuasive. The deliberative process privilege's "ultimate purpose . . . is to prevent injury to the quality of agency decisions by allowing government officials freedom to debate alternative approaches in private." *In re Sealed Case*, 121 F.3d at 738. JWF has not convinced the court that this ultimate purpose would be served equally well by making the privilege temporary, let alone that the privilege

should be held to have expired here less than three years after deliberations by the still-sitting Attorney General.

Given these circumstances, the court finds that the Attorney General's notes were properly withheld under the deliberative process privilege as incorporated into FOIA exemption five. *See Judicial Watch v. Clinton*, 880 F.Supp. 1, 13 (D.D.C.1995) ("handwritten notes reflecting preliminary thoughts of agency personnel" were properly withheld under the deliberative-process privilege), *aff'd*, 76 F.3d 1232 (D.C.Cir.1996).[8] Accordingly, the defendant DOJ's motion for summary judgment will be granted with respect to the AG notes.

### D. Documents Withheld or Redacted Pursuant to Exemption 6, Personal Privacy

#### i. *Exemption 6*

Exemption Six exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "[S]imilar files" are broadly defined to include any "Government records on an individual which can be identified as applying to that individual." *See U.S. Dept. of State v. Washington Post Co.*, 456 U.S. 595, 601–602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982).

■ To determine whether a disclosure would constitute a clearly unwarranted invasion of personal privacy, the court must weigh the privacy interests in nondisclosure against the public interests in disclosure. *See National Ass'n of Retired Federal Employees v. Horner*, 879 F.2d 873, 874 (D.C.Cir.1989). Individuals have a privacy interest in personal information even if it is not of an embarrassing or intimate nature. *See Washington Post*, 456 U.S. at 600, 102 S.Ct. 1957 ("Information such as place of birth, date of birth, date of mar-

---

**8.** "Some aspects of the privilege, for example the protection accorded the mental processes of agency officials . . . have roots in the constitutional separation of powers." *In re Sealed Case*, 121 F.3d 729, 737 n. 4 (D.C.Cir. 1997) (internal citation omitted).

riage, employment history, and comparable data is not normally regarded as highly personal, and yet ... such information ... would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy.").

 The weight of the public's interest in disclosure depends on the degree to which disclosure would shed light on an agency's performance of its statutory duties and its compliance with the law. *See Reed v. NLRB*, 927 F.2d 1249, 1252 (D.C.Cir.1991), *cert. den.*, 502 U.S. 1047, 112 S.Ct. 912, 116 L.Ed.2d 812 (1992). In assessing the public interest, the court must examine "the nature of the requested document and its relationship to the basic purpose of [FOIA] to open agency action to the light of public scrutiny.... Official information that sheds light on an agency's performance of its statutory duties" merits disclosure. *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (citation omitted). The purposes of FOIA are "not fostered," however, "by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.*

ii. *Documents Regarding Third Parties Involved in DNC Events*

 JWF objects to DOJ's redaction, from five pages of unspecified documents, of:

[1] names of third parties employed at the Democratic National Committee as scheduling coordinators ... [and] responsible for reservations for various DNC events, [and]

[2] names of Capitol Hilton employees [who] were listed as contacts for questions concerning a particular event at or connected with the hotel.

(Pustay Dec. ¶ 29). On the record before the court, the court cannot say that DOJ is entitled to judgment as a matter of law with respect to these redactions, because DOJ has not adequately described the nature of the redacted documents. Without this information, the court cannot make an informed assessment of either the named individuals' privacy interests in nondisclosure or the public's interest in disclosure of the names. DOJ's supporting declaration describes the redacted documents only as "five pages" and states:

We decided that these individuals have a privacy interest in not being associated in any way with [DOJ] documents that were considered responsive to a request for information on alleged campaign finance abuses. We also decided that there was no public interest in the identities of these individuals because neither their names nor their telephone numbers say anything about what the [DOJ] was doing with regard to alleged campaign finance abuses.

(Pustay Dec. ¶ 29). DOJ's conclusions may have been correct, but this court, charged with *de novo* review, cannot simply adopt DOJ's interpretation of the factors controlling disclosure in this instance. The affidavits supporting a motion for summary judgment in a FOIA case "will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Hayden v. National Sec. Agency/Central Sec. Service*, 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. den.*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). Summary judgment with respect to these redactions is, accordingly, denied.

iii. *Correspondence Files of Executive Secretariat*

 JWF objects to the redaction, from "fourteen pages of records from the correspondence files of the Executive Secretariat," of the names, addresses, home telephone numbers and "other identifying information ... of individuals who communicated with the Department regarding Independent Counsel Act matters." (Pustay Dec. ¶ 28). "The text of these letters was

not withheld; [DOJ] asserted Exemption 6 protection only for the identities of the writers." *Id.* DOJ claims that "while a public interest exists in knowing the substance of the correspondence that the Attorney General received on campaign finance issues, that public interest was not served by disclosing the identities of individual letter writers." (Mot. for Part. Summ.J. at 29). The court agrees that here there is no public interest which outweighs individuals' privacy interests in their home addresses and telephone numbers, and summary judgment accordingly is granted to DOJ as to these redactions.

 The names and "other identifying information" present a closer question. A person who has written a letter to a federal official may have a great privacy interest in the nondisclosure of his name. On the other hand, the court can imagine scenarios in which disclosing the identity of those who wrote letters to the AG regarding campaign finance issues or Independent Counsel Act matters might not "constitute a clearly unwarranted invasion of personal privacy" within the meaning of FOIA Exemption Six. Suppose, for instance, that such a letter was from an elected official and asked the Attorney General not to appoint an independent counsel to investigate alleged campaign-finance law violations. Suppose that DOJ did as the letter asked, despite evidence that arguably would have supported such appointment. Depriving the public of knowledge of the writer's identity would deprive the public of a fact which could suggest that their Justice Department had been steered by political pressure rather than by the relevant facts and law. Such information might well shed light on an agency's performance of its statutory duties, which is the very purpose of FOIA and is at the heart of the public's interest in disclosure. *See Reporters Committee,* 489 U.S. at 773, 109 S.Ct. 1468. This court is not here to decide hypothetical cases; suffice it to say that on the record before the court, the court is unable to conclude

that DOJ is entitled to judgment as a matter of law. Summary judgment will, accordingly, be denied with respect to the redacted names and "other identifying information," not including addresses and phone numbers.

JWF objects to the redaction, from certain specified documents, of the names of "lower level employees" and the "names, home telephone numbers and identifying information about third parties." (Little Dec. ¶ 24). JWF asserts that "DOJ merely concludes, without citing any specific reasons ... that no public interest exists in this information because the identities of these individuals say nothing about the agency's conduct." (Opp. at 14–15). JWF does not address the document-by-document withholding analysis set forth in the *Vaughn* indices; rather, JWF argues broadly that the weight of the public interest in the disclosure of the withheld and redacted information may be sufficient to warrant the invasion of personal privacy. The record as it stands is not sufficient for the court to decide this issue. DOJ's *Vaughn* indices and affidavits do not provide sufficient facts for the court to conclude that DOJ is entitled to judgment as a matter of law with respect to the following withholdings and redactions, pursuant to Exemption Six: Executive Office for U.S. Attorneys *Vaughn* Index nos. I.A.4; I.B.1A, I.B.1C; I.E.1, I.E.3, I.E.13, I.E.15, I.E.17; II.B.1.; II.C.3, II.C.5, II.C.6, II.C.7, II.C.8; II.D.2. II.D.4, II.D.5, II.D.6, and II.D.8. Accordingly, the court will deny summary judgment with respect to the Exemption Six withholdings and redactions.

### E. Documents Withheld or Redacted Pursuant to Exemption 7, Law–Enforcement Records

#### i. *Exemption 7*

 JWF objects to the withholding and redaction of records under FOIA exemption seven. Exemption seven exempts from disclosure "records or information compiled for law enforcement purposes,

but only to the extent that production of such records or information" could reasonably be expected to cause at least one of the specific types of harm listed in exemption 7(A)–(F). 5 U.S.C. § 552(b)(7). A record is compiled for law enforcement purposes if the government proves that the record "was created or acquired in the course of an investigation related to the enforcement of federal laws and the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least a colorable claim of rationality." *Quinon v. FBI,* 86 F.3d 1222, 1228 (D.C.Cir.1996). If the government carries this burden, the burden shifts to the party requesting the documents to produce evidence that the asserted law-enforcement rationale was merely pretextual. *See Doe v. FBI,* 936 F.2d 1346, 1354 (D.C.Cir.1991). "If the [requestor] fails to rebut the showing of law enforcement purpose, the agency is entitled to summary judgement." *Id.*

DOJ withheld and redacted records under exemptions 7(A) and 7(C). Exemptions 7(A) and 7(C) exempt from disclosure "records or information compiled for law enforcement purposes, ... to the extent that production ... could reasonably be expected to interfere with enforcement proceedings" or could reasonably be expected to cause an unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(7)(A), (C).

With respect to all documents withheld or redacted under exemption seven, JWF argues that the government is required to indicate a specific pending or contemplated law-enforcement proceeding and that the government has failed to do so here. (Opp. at 16). JWF is correct that, for exemption 7(A) to apply, the government must show the existence of a pending or contemplated enforcement proceeding with which disclosure would interfere. *See Mapother v. DOJ,* 3 F.3d 1533, 1540–41 (D.C.Cir.1993).

The same is not true of exemption 7(C). In *Coastal States Gas Corp. v. DOE,* 617

F.2d 854, 870 (D.C.Cir.), the D.C. Circuit said, with respect to exemption 7(A), "[t]here is no reason to protect yellowing documents contained in long-closed files." That is true where the exemption protects information, the release of which "could reasonably be expected to interfere with enforcement proceedings...." 5 U.S.C. § 552(b)(7)(A), since completed proceedings cannot easily be interfered with. The same is not true with exemption 7(C), which shields information which "could reasonably be expected to constitute an unwarranted invasion of personal privacy...." The threat to personal privacy posed by information in law enforcement files does not necessarily end when the enforcement proceeding ends. To the extent that JWF's argument is aimed at records withheld and redacted under exemption 7(C), it fails. JWF challenges no material facts with respect to these withholdings and offers no other legal arguments. Accordingly, the court will grant summary judgment as to records withheld or redacted pursuant to Exemption 7(C).

As to records withheld and redacted under exemption 7(A), JWF argues that the DOJ fails to indicate with what pending or contemplated enforcement proceedings disclosure would interfere. JWF is mistaken. DOJ's declarations state that there is an ongoing Criminal Division investigation of campaign-finance law violations with which disclosure would interfere. (Supplemental Declaration of Linda J. Joachim Dec. dated 8/26/99 ("Supp. Joachim Dec."), ¶¶ 12–13; Dolan Dec., 8/27/99, ¶ 9).

JWF also argues that DOJ categorically fails to articulate what harm could reasonably be expected to result from disclosure. JWF again is mistaken. The Justice Department's supporting declarations detail a list of harms that could reasonably be expected to result from each genus of information which it has withheld or redacted. (Supp. Joachim Dec., ¶ 16; Dolan Dec. ¶ 9.) For example, "prematurely disclosing documents related to witnesses in ongoing inquiries and investigations could result in

witness tampering or intimidation ... and could discourage the continued cooperation of these witnesses...." (Supp. Joachim Dec. ¶ 16) Among other harms which could result from disclosure, DOJ explains that disclosure could provide targets of the investigation with insight into the government's case against them. Armed with such knowledge, the targets could "alter, tailor or destroy evidence, as well as ... fabricate alibis...." *Id.*

Because there is no genuine issue of material fact, summary judgment will be granted with respect to all withholding and redactions thus far made under Exemption 7(A).

### F. Unopposed Withholdings and Redactions

With respect to many of the withholdings and redactions described in DOJ's memoranda, *Vaughn* indices and declarations, JWF neither contests material facts declared by DOJ, nor counters DOJ's arguments as to why it is entitled to judgment as a matter of law. With respect to these documents, then, Judicial Watch effectively has failed to oppose the motion for summary judgment. In this court, an unopposed motion may be treated as conceded by the nonmoving party. *See* Local R. LCvR 7.1(b) (formerly Local R. 108(b)); *Johnson v. Greater Southeast Community Hosp. Corp.*, 903 F.Supp. 140, 150 (D.D.C. 1995), *order vac'd in pt. o.g.*, 1996 WL 377147 (D.D.C.1996). In deciding a motion for summary judgment, the court may assume that each fact identified in the movant's statement of material facts is admitted unless controverted by the opposition. *See* Local R. L.Cv.R. 7.1(h). To the extent that DOJ has made a cogent and unanswered argument supported by valid authority that the Department is entitled to judgment as a matter of law upon facts so conceded, the court will not construct legal arguments on the non-movant's behalf. Consequently, the court will grant summary judgement to DOJ with respect to

the following unopposed withholdings and redactions:

■ the redaction, from certain documents released by the CIA, of the name of a CIA attorney who represented the CIA in litigation between Judicial Watch and the Department of Commerce;

■ drafts of questions and answers drafted by the Office of Public Affairs to assist the AG and Deputy AG in answering questions from the media at the "Attorney General's Press Availability;"

■ an electronic mail message dated May 14, 1997 from the AG's Chief of Staff to the head of the Office of Public Affairs and to a Deputy Assistant A.G. of the Criminal Division discussing possible methods for handling a Congressional inquiry concerning the campaign finance task force;

■ draft letters to members of Congress from the AG or Assistant AG Fois regarding campaign finance and independent counsel matters;

■ the documents under seal referred to in the 8/20/99 Little Declaration at ¶ 26 and the Lutz Declaration of August 25, 1999 at ¶ 9.

## V. CONCLUSION

For the foregoing reasons, this court will grant in part and deny in part DOJ's motion for partial summary judgment as described herein. An Order consistent with this Memorandum Opinion was previously executed and issued. This Memorandum Opinion is executed and issued this 22nd day of February, 2000.