gangster movies. That seems like a bit of an overreaction to my *ipse dixit*. In order to keep campaign contributors free of regulation and disclosure, are we going to declare unconstitutional all state and federal regulations that require home addresses to be given to a governmental agency — election laws, driver's licenses, occupational licenses, taxes, etc.? It is interesting that our dissenting colleague has not cited a single appellate case which has ever invalidated such a home address disclosure requirement. Is the First Amendment principle he favors just limited to laws that attempt to regulate campaign finance?

Given the weakness of the constitutional argument against home address disclosure, we should not politicize the First Amendment so that it becomes the means of defeating limitations on contributions and disclosure requirements disfavored by particular political groups. Perhaps my *ipse dixit* was too cryptic, but the basic point remains sound.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0308P (6th Cir.)
File Name: 02a0308p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOHN V. FRANK; MARCO SOMMERVILLE; JOHN W. VALLE; ROBERT G. KONSTAND; GERALD HOLLAND; NANCY HESLOP; CHARLES WALKER,
     *Plaintiffs-Appellees/*
      *Cross-Appellants,*
    v.

CITY OF AKRON,
     *Defendant-Appellee,*

BRUCE KILBY; MIKE PARSONS; PATRICIA LONGVILLE; GREGORY D. COLERIDGE; the YES on 11 CAMPAIGN,
     *Intervenors-Appellants/*
      *Cross-Appellees.*

Nos. 00-3050/3070

Filed: September 9, 2002

Before: MERRITT, CLAY, and GILMAN, Circuit Judges.

---

### AMENDED ORDER

---

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the cases. Accordingly, the petition is denied.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____

Clerk

### RESPONSE TO DISSENT FROM DENIAL OF REHEARING EN BANC

MERRITT, Circuit Judge. Campaign finance reform has become an intensely partisan, national political issue in which the First Amendment is constantly raised as a shibboleth to defeat any regulation of political contributions and any disclosure requirements that our elected officials enact. The judges must intervene to save the day. That is the climate in which this case arises. And that is the context in which my distinguished dissenting colleague, with a Latin legalism, colorfully refers to my discussion of the home address disclosure requirements in this case as "cavalier" "*ipse dixit.*"

I rise to the bait. In defense of my cavalier, *ipse dixit* discussion of Akron's home address disclosure requirement, I should point out, as we did in the opinion, that home addresses are already required as a part of the election process nationwide and in many other contexts. In order to vote, voters must provide local election commissions with their home addresses. Voting, like elections, is always local; and local commissions need to know a person's home address so that the voter can be placed in a voting precinct. These are public records in Ohio and across the country. In order to avoid vote fraud and administer the election process, voters must advise the local election commissions periodically where they live and when they move.

Similar reasons apply to the home address requirement here. In order to enforce finance limitations properly against violators, the enforcement agency needs to know the place where contributors live, how much they gave and how many times. Voters and candidates have an interest in knowing whether the money is coming from voters in the district or contributors from other districts, cities, states and nations.

Our dissenting colleague characterizes such home address disclosure requirements as "coercive," "chilling" and like the "we-know-where-you-live" threats in James Cagney-type

as the ones at issue here rarely rely on the mass media campaigns seen on the national level," without any contemplation of the fact that television advertising is certainly not unknown in mayor and council elections in mid-size metropolitan areas, such as Akron. In particular, such elections can be of intense interests to local media, who are, of course, free to spend unlimited sums in supporting their political friends and vilifying their political opponents. Under these circumstances, one might have thought the court would have given at least some attention to a limiting principle, if any, by which these radically low limits could be upheld that would not similarly justify incrementally lower limits approaching zero. After all, if an approved limitation is simply half of some previously approved limitation, and if there is no contemplation of a true limiting principle, then the limits can be driven down essentially to zero. *See Zeno's Paradox*, as explicated in, *e.g., United States v. Block*, 452 F. Supp. 907, 909 n.2 (M.D. Fla. 1978).

For all of these reasons, I believe that the court's support of these efforts that suppress or discourage political association and expression should have been considered further.

## DISSENT FROM DENIAL OF
## REHEARING EN BANC

BOGGS, Circuit Judge. Under the First Amendment, citizens have very broad rights to attempt to persuade their neighbors of the correctness of social and political propositions, and even to attempt to advance those views by supporting the election of candidates to public office. While cases such as *Buckley v. Valeo*, 424 U.S. 1 (1976), and *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000), have indicated that those rights can be restricted, it can only be done after careful scrutiny of the proposed regulations and their effect on core constitutional values. With respect to two portions of the City of Akron ordinance, I believe that the court's opinion is considerably too cavalier in upholding governmental intrusion on these values. I therefore respectfully dissent from the denial of rehearing en banc as to those provisions.

Ever since cases such as *Bates v. City of Little Rock*, 361 U.S. 516 (1960), it has been clear that coerced revelation of one's political activity and associations can be a means of assisting coercion and repression of those views, and must be judged under First Amendment standards. The Akron ordinance has a feature that appears not to exist in any other litigated campaign regulations statute: it requires everyone who wants to contribute to a political candidate to reveal his or her home address. The court's opinion, in a very short *ipse dixit*, overturns the district court's holding of unconstitutionality of this provision based on our court's assertion that there is "no meaningful distinction" between being required to list a mailing address and a home address, and its notation that most individuals' homes can be located through the phone book or the internet.

In light of the constitutional protection that the Supreme Court has given to even completely anonymous political speech (*see McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)), the court should have been more concerned

about the First Amendment values impinged upon by this type of compelled disclosure.  Just as in *Bates*, where the forced revelation of political association with the NAACP made it easier for persons to bring economic or physical pressure to bear on disfavored groups, the forced revelation of home addresses can be extremely chilling to people who may wish to contribute to candidates that may be broadly unpopular, or simply unpopular with particular powerful interests.  The very fact that "we know where you live" is a commonplace expression, implying coercion, in movies and the general culture, shows the vast difference between a mailing address (which could be a commercial establishment or Post Office box listing), and the revelation of one's home location and its connection to an unpopular political cause.[1]

It should be noted that courts have been vigilant in protecting even very vigorous negative political activity.  In *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902, 927-28 (1982), the Supreme Court upheld the First Amendment rights of persons who made speeches threatening to "break

---

[1] With respect to the uses of home addresses, *see* Prana A. Topper, *Note, The Threatening Internet*, 33 Colum. Hum. Rts. L. Rev. 189, 236 (Fall 2002) (discussing the appropriateness of abortion rights advocates posting the home address and other personal information of abortion opponents in responses to the Nuremberg Files case).  Also, note that in the context of commercial privacy protections, a home address is considered quite personal information. *See* Jeffrey S. Lehman, address to the Conference on Law, Policy, and the Convergence of Telecommunications and Computing Technologies in 2001 Mich. Telecomm. and Tech. L. Rev. 1 (unpaginated) (Westlaw page 109 of 386); Matthew Diller, et al., *Privatization in Practice: Human Services*, 28 Fordham Urb. L.J. 1435, 1439-40 (2001) (discussing proposed legislation to prohibit contractors from selling "private information, such as social security numbers, income information and home addresses").

If Judge Merritt, or the reader, believe that the First Amendment considerations for compelled disclosure of the fact that one has a driver's license or is registered to vote are little different from those involved in disclosure of a maximum contribution to (merely for illustration) David Duke or Lenora Fulani – then I am unlikely to be able to persuade them otherwise.

[your] damn necks" if political opponents undertook certain actions. In *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition  of Life Activists*, 244 F.3d  1007 (9th Cir. 2001), *aff'd in part and vacated in part en banc*, 290 F.3d 1058 (9th Cir. 2002), persons using the internet to post lists of political opponents and expressing pleasure in their injury or death came very close to being accorded First Amendment protection.

Under these circumstances, the knowledge that, as a routine matter, the state can coerce you into helping your political opponents "know where you live" can indeed be chilling. Those persons who may guard their privacy enough to take steps to make their home addresses less accessible (as with the huge numbers of people who do not list their full names, full addresses, or  even their phone numbers in the phone books) might be exactly those who would wish some protection from state-assisted political coercion.

By analogy, a recent case concerning home addresses is instructive.  In *Judicial Watch of Florida v. United States Dep't of Justice*, 102 F. Supp. 2d 6 (D.D.C. 2000), a district court that expressed skepticism of the Department of Justice's efforts to avoid revealing letters that had been written to the Department of Justice concerning campaign finance issues specifically did not extend that skepticism to home addresses and telephone numbers, in a case under FOIA.  ("There is no public interest which outweighs individual's privacy interests in their home addresses and telephone numbers, and summary judgment accordingly is granted to DOJ as to these redactions."). *Id*. at 17.

The second problematic portion of the opinion concerns the extremely low contribution limits in the Akron ordinance. Citizens are prevented from contributing more than $100 in every election cycle (two years) to city council candidates from individual wards that average over 20,000 residents. This is a smaller limit than has ever been upheld in any other litigation.  The court blithely asserts that "local elections such